**Reversed and Remanded and Opinion filed October 18, 2012.**



**In The**

# Fourteenth Court of Appeals

**NO. 14-10-00841-CR**

**ARTHUR JERONE WOODS, Appellant,**

**V.**

**THE STATE OF TEXAS, Appellee.**

**On Appeal from the 232nd District Court
Harris County
Trial Court Cause No. 1236016**

## O P I N I O N

Appellant Arthur Jerone Woods appeals his jury conviction for theft of property valued at more than $20,000 but less than $100,000. In three issues, Woods argues that the trial court violated his right to a public trial by closing the courtroom during voir dire and erred in two evidentiary rulings. We hold that the trial court violated Woods's right to a public trial, and, without reaching the evidentiary issues, we reverse and remand.

I

A grand jury indicted Woods for theft of property valued at more than $200,000.

The trial court conducted voir dire on March 1, 2010, with the Honorable Mary Lou Keel presiding. Deputies Marcus Clay and Dave Nixon arrived to seat the jury panel, but before doing so, Deputy Clay instructed the spectators to leave the courtroom and wait outside until voir dire was over. Among those spectators were Freda Ariza and Walter Ballard, both members of Woods's defense team, and Woods's wife, Wendy. Ariza reentered the courtroom, told Deputy Clay that she was part of Woods's defense team, and asked permission to stay. Deputy Clay allowed her to sit in the jury box. Robert Jones, who represented Woods's codefendant, also sat in the jury box. Wendy testified that she identified herself as Woods's wife to Deputy Clay and asked him to let her stay for voir dire but that Deputy Clay denied her request, explaining that the jury panel was going to need all the seating. Deputy Clay, however, testified that he does not remember anyone representing themselves to him as Woods's wife. Ballard did not object to Deputy Clay's instructions or request permission to stay. After voir dire was over, Wendy and Ballard told Woods's attorney, James McGuire, of their eviction.

The next morning, Woods filed a motion for mistrial, arguing that the court violated his right to a public trial under the Sixth and Fourteenth Amendments to the United States Constitution as well as the Texas Constitution's bill of rights. The trial court denied the motion, explaining as follows:

> The [c]ourt's read the motion and the [c]ourt would like to comment that the motion misrepresents this [c]ourt's approach to voir dire. If it presents what happened yesterday as far as the [c]ourt's concerned the [c]ourt was not aware that anybody was excluded from the courtroom. No objection was raised and in fact there were a couple people sitting in the jury box who are not directly associated with this case who observed voir dire. And in the past when family members have wanted to watch voir dire they have been accommodated but no request was made to this [c]ourt and the [c]ourt was not aware that anybody wanted to watch voir dire otherwise the [c]ourt would have followed its usual policy of letting observers watch from the jury box.

Woods later filed a motion to recuse Judge Keel based on the voir dire proceedings, but she declined to voluntarily recuse herself, and the motion was denied. Ultimately, the jury convicted Woods of the lesser-included offense of theft of property valued at more than

$20,000 but less than $100,000 and sentenced him to seventeen years' imprisonment in the Texas Department of Criminal Justice, Institutional Division.

## II

In his first issue, Woods asserts that the trial court violated his right to a public trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by article I, section 10, of the Texas Constitution.[1]

### A

The Sixth Amendment guarantees the accused in all criminal prosecutions the right to a public trial. U.S. Const. amend. VI; *Herring v. New York*, 422 U.S. 853, 856–57 (1975); *Lilly v. State*, 365 S.W.3d 321, 328 (Tex. Crim. App. 2012). The Fourteenth Amendment extends this fundamental right to defendants in state criminal prosecutions. U.S. Const. amend. XIV; *Herring*, 422 U.S. at 857; *In re Oliver*, 333 U.S. 257, 266–67 (1948)). Further, the right to a public trial extends to the voir dire of prospective jurors. *Presley v. Georgia*, 558 U.S. 209, 130 S. Ct. 721, 724 (2010); *see also Steadman v. State*, 360 S.W.3d 499, 510 & n.41 (Tex. Crim. App. 2012). Trial courts must take every reasonable measure to accommodate public attendance at criminal trials, and a violation of a defendant's public-trial right is a structural error that does not require a showing of harm and warrants automatic reversal. *Presley*, 558 U.S. at 725; *Johnson v. United States*, 520 U.S. 461, 468–69 (1997); *Lilly*, 365 S.W.3d at 328; *Steadman*, 360 S.W.3d at 510.

The right to a public trial is not absolute: It may be outweighed by other competing rights or interests, such as interests in security, preventing disclosure of non-public information, or ensuring that a defendant receives a fair trial. *Waller v. Georgia*, 467 U.S. 39, 45 (1984); *Lilly*, 365 S.W.3d at 328. The presumption of openness "may be

---

[1] Because there is no significant textual difference between the language guaranteeing the right to a public trial in the Sixth Amendment to the United States Constitution and article I, section 10, of the Texas Constitution, Texas follows the United States Supreme Court and the federal courts of appeal concerning this right. *Uranga v. State*, 330 S.W.3d 301, 304 (Tex. Crim. App. 2010); *Andrade v. State*, 246 S.W.3d 217, 224 n.5 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). Accordingly, we do not separately address Woods's state constitutional claim.

overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter. Co. v. Superior Court of Cal., Riverside Cnty.*, 464 U.S. 501, 510 (1984); *Lilly*, 365 S.W.3d at 328 n.6 ("This presumption that criminal trials should be public, absent an overriding interest, is a reflection of this nation's fundamental distrust of secret trials and the belief that 'justice must satisfy the appearance of justice.'") (quoting *In re Oliver*, 333 U.S. at 268). The exceptions will be rare, and the balance of interests must be struck with special care. *Presley*, 558 U.S. 209, 130 S. Ct. at 724 (citing *Waller*, 467 U.S. at 45). The Supreme Court identified four prongs that a court must satisfy to justify closure: (1) There must be an overriding interest that is likely to be prejudiced absent closure, (2) closure must be no broader than necessary to protect that interest, (3) the trial court must consider reasonable alternatives to closing the proceeding, and (4) the court must make findings adequate to support the closure. *Waller*, 467 U.S. at 48 (citing *Press-Enter. Co.*, 464 U.S. at 510).

We apply a bifurcated standard of review to the trial court's ruling on Woods's public-trial claim, reviewing legal conclusions de novo and factual findings for an abuse of discretion. *See Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). Because the trial court ruled in favor of the State on Woods's motion for mistrial, we must presume the trial court resolved any disputed fact issues in the State's favor, and we must also defer to the implied findings of fact that the record supports. *Id.* (citing *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999)). In this case, however, most of the facts are undisputed, and the primary issue involves the legal significance of those facts to Woods's claim.

B

The State argues that Woods failed to preserve this issue for appeal because he did not object to the trial court when Deputy Clay excluded the spectators from the courtroom. Woods insists that his motion for new trial was timely because he did not learn of the closure until after voir dire ended and the trial court had recessed.[2]

To preserve error for appeal, the complaining party must make "a timely request, objection, or motion" to the trial court. Tex. R. App. P. 33.1(a)(1). To be timely, a party must complain at the earliest possible opportunity, which arises as soon as the error becomes apparent such that the party knows or should know that an error has occurred. *Hollins v. State*, 805 S.W.2d 475, 476 (Tex. Crim. App. 1991); *Martin v. State*, 246 S.W.3d 246, 258 (Tex. App.—Houston [14th Dist.] 2007, no pet.). The purpose of the preservation requirement is threefold: (1) to ensure that the trial court will have an opportunity to prevent or correct errors, thereby eliminating the need for costly and time-consuming appeal and retrial; (2) to guarantee that opposing counsel will have a fair opportunity to respond to complaints; and (3) to promote the orderly and effective presentation of the case to the trier of fact. *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006) (citing *Saldano v. State*, 70 S.W.3d 873, 887 (Tex. Crim. App.

---

[2] Woods alternatively argues that structural errors can be raised for the first time on appeal, while the State argues that a public-trial claim is subject to the error-preservation rules. The Court of Criminal Appeals has stated that the courts of appeals have confused the concept of "structural error," which has to do with the harmfulness of error, with the concepts of systemic requirements, waivable rights, and forfeitable rights, which have to do with preservation of error. *Mendez v. State*, 138 S.W.3d 334, 339–41 (Tex. Crim. App. 2004). In *Mendez*, the court noted that it has used the word "fundamental" to describe complaints that may be raised for the first time on appeal. *Id.* at 341. And it has referred to the public-trial right as "fundamental." *See, e.g.*, *Clark v. State*, 365 S.W.3d 333, 340 (Tex. Crim. App. 2012). Nevertheless, whether a public-trial claim can be raised for the first time on appeal is not clearly settled. *See Levine v. United States*, 362 U.S. 610, 618 (1960) (stating that closure of the courtroom during the grand-jury hearing that continued into a contempt hearing did not violate the defendant's public-trial right absent a request for the court to be opened to preserve the error for appeal); *Lilly v. State*, 365 S.W.3d 321, 327–28 (Tex. Crim. App. 2012) (hearing the appellant's public-trial claim only after finding sufficient contradictory evidence in the record to rebut any presumption that the appellant intended to waive his claim); *but see Walton v. Briley*, 361 F.3d 431, 434 (7th Cir. 2004) (concluding that failure to object at trial did not result in waiver of defendant's claim that his right to a public trial was violated). In this case, however, we conclude that Woods timely made his objection to the trial court, so we need not determine whether he could have raised his claim for the first time on appeal.

2002); *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977)).

In this case, McGuire was in the front of the courtroom preparing for voir dire when Deputy Clay approached the spectators, who sat in the back of the room, and instructed them to leave. Later, when Ariza identified herself to Deputy Clay, McGuire called out to confirm that she was part of the defense team, but Ariza testified that she does not think McGuire knew that anyone else had been excluded. Woods testified that his defense team was busy preparing for voir dire and that there was no discussion among them about anyone being excluded. After Deputy Clay seated the jury panel, neither McGuire nor Woods would have been able to distinguish potential jurors from spectators. Although both would have recognized Wendy, her absence would not have been readily ascertainable in a full gallery while McGuire and Woods focused on voir dire. Additionally, the trial court consistently maintained that voir dire was not closed, which further suggests that closure was not so apparent that Woods should have been aware of it during voir dire. Therefore, we conclude that Woods timely filed his motion contesting closure of voir dire at his earliest possible opportunity and thereby preserved this issue for appeal.

## C

The State also argues that voir dire was not closed, relying on the fact that the trial court permitted Ariza and Jones to sit in the jury box and Deputy Clay's testimony that "those who wish to remain in the courtroom during voir dire are accommodated."

Trial courts must take every reasonable step to accommodate public attendance at criminal trials. *Presley*, 558 U.S. at 725. The exclusion of a specific person or group, even if only temporary, constitutes a partial closure. *See, e.g.*, *Douglas v. Wainwright*, 739 F.2d 531, 532 (11th Cir. 1984) (analyzing a partial closure where the court excluded one person from the courtroom during one witness's testimony to protect that witness from emotional harm). It is constitutionally irrelevant whether closure was intentional or inadvertent. *Walton v. Briley*, 361 F.3d 431, 432 (7th Cir. 2004); *Peterson v. Williams*, 85 F.3d 39, 44 & n.8 (2d. Cir. 1996). Additionally, a closed courtroom does not become

open merely because the trial court would have admitted spectators who knocked on previously sealed doors. *Peterson*, 85 F.3d at 44 n.7 ("Spectators do not have the burden of banging on closed courtroom doors during trial. . . . [T]he possible existence of some spectators brave or arrogant enough to seek admission does not convert the courtroom into an open one.").

In this case, the trial court asserts that it was unaware that anyone was excluded from voir dire. But that is constitutionally irrelevant to whether the court was, in fact, closed. *See Walton*, 361 F.3d at 433. Further, the State incorrectly restates Deputy Clay's testimony: He did not testify that the court accommodated anyone who wished to remain but rather only those who made special requests to sit in the jury box. He also testified that spectators could enter through the side or back entrances after the venire was set, but he admitted that no one notifies spectators of either policy. We defer to the trial court's factual conclusion that Wendy did not ask Deputy Clay for permission to stay in the courtroom after he told her to leave. It is undisputed, however, that Deputy Clay told Wendy, Ballard, and a number of other spectators to leave the courtroom and wait outside until voir dire was over. The court's policy to accommodate spectators who, in spite of Deputy Clay's instructions, sought reentry into the courtroom did not transform the closed courtroom into an open one. *See Peterson*, 85 F.3d at 44 n.7. Therefore, we conclude that the courtroom was closed, at least to some extent, during voir dire.

D

The State further argues that, because the trial court permitted Ariza and Jones to watch voir dire from the jury box, any closure that did occur was only partial and thus subject to the substantial-reason requirement rather than the overriding-interest requirement.

The public-trial guarantee enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system. *Press-Enter. Co.*, 464 U.S. at 508. It protects criminal defendants against possible abuses of judicial power and enhances the integrity of the judicial system by encouraging witnesses to

come forward, discouraging perjury, and assuring the public that courts are following procedures and observing standards of fairness. *Waller*, 467 U.S. at 46; *Lilly*, 365 S.W.3d at 328. Nevertheless, partial closures do not raise the same constitutional concerns as total closures because an audience remains to ensure the fairness of the proceedings and preserve the safeguards of public trials. *United States v. Osborne*, 68 F.3d 94, 98 (5th Cir. 1995) (citing *Waller*, 467 U.S at 46). Therefore, a number of circuit courts have held that trial courts need only a substantial reason rather than an overriding interest to justify a partial closure. *See id.* at 98–99; *United States v. Farmer*, 32 F.3d 369, 371 (8th Cir. 1994); *Woods v. Kuhlmann*, 977 F.2d 74, 76 (2d Cir. 1992); *United States v. Sherlock*, 962 F.2d 1349, 1357 (9th Cir. 1989); *Nieto v. Sullivan*, 879 F.2d 743, 753 (10th Cir. 1989); *Douglas*, 739 F.2d at 532–33. Each of those circuit courts held that the need to protect a witness from retaliation or emotional harm justified temporarily excluding a specific person or group from the courtroom during that witness's testimony. *See Osborne*, 69 F.3d at 99 ("With one exception, the court allowed all existing spectators to remain in the courtroom . . . [I]n the circumstances this case presents, the defendants were not denied their Sixth[-]Amendment right to a public trial.").[3]

Although the trial court permitted Ariza and Jones to watch voir dire from the jury box, we doubt the presence of a codefendant's attorney and a member of Woods's defense team effectively preserved the safeguards of a public trial. Nevertheless, we do not reach a conclusion regarding the extent of this closure because the trial court had no reason, let alone a substantial reason or an overriding interest, to justify excluding

---

[3] *See also Farmer*, 32 F.3d at 371 (concluding that the victim's age, the brutal nature of the offense, and the victim's well-reasoned fear of the defendant and his family was more than enough to justify excluding the defendant's family during the victim's testimony); *Woods*, 977 F.2d at 77 (excluding the defendant's family during the victim's testimony because "protection of a witness who claims to be frightened as a result of perceived threats meets both the 'substantial[-]reason' and the 'overriding[-]interest' standards"); *Sherlock*, 962 F.2d at 1357 (excluding the defendant's family during the testimony of a young victim of a sex crime for the purpose of protecting her from the trauma and embarrassment of public scrutiny); *Nieto*, 879 F.2d at 753 (excluding members of the defendant's family during the testimony of a witness to protect him from retaliation by co-assailants who the police had yet to apprehend); *Douglas*, 739 F.2d at 532–33 (finding that protection of the witness from unnecessary insult to her dignity was sufficient to justify a partial closure and allow only the press and family members of the defendant, the witness, and the decedent to remain during the witness's testimony).

spectators from voir dire.

The State argues that excluding spectators was a matter of "practicality" due to the limited gallery seating. But the trial court not only failed to adopt that rationale, it specifically contradicted it by acknowledging that it would have been appropriate for spectators to sit in the otherwise-vacant jury box during voir dire. Therefore, even according to the trial court, limited gallery seating was no reason to exclude spectators from the entire courtroom.

\* \* \*

Because the trial court had neither a substantial reason nor an overriding interest to justify excluding members of the public from the courtroom during voir dire, we need not consider the remaining elements that are required to justify closure. We conclude that the trial court violated Woods's right to a public trial and, because this structural error requires automatic reversal, we do not address Woods's evidentiary issues. We reverse and remand this cause for further proceedings consistent with this opinion.

/s/ Jeffrey V. Brown
Justice

Panel consists of Chief Justice Hedges and Justices Seymore and Brown.

Publish — TEX. R. APP. P. 47.2(b).

9