**Opinion issued August 21, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00198-CR

_____

**BOBBY JOE PEYRONEL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Case No. 1254877**

---

## OPINION

Appellant Bobby Joe Peyronel was charged by indictment with aggravated sexual assault of a person younger than 14 years of age. A jury found Peyronel guilty and assessed punishment at 50 years in prison and a $10,000 fine. On appeal, Peyronel raises three issues: (1) the trial court violated his right to a public

trial, (2) the judgment incorrectly reflects that he was convicted for aggravated sexual assault of a child under six years old, and (3) there was insufficient evidence to support the costs assessed in the judgment. We modify the judgment to correctly reflect the charged offense, affirm the judgment of conviction as modified, reverse the judgment as to punishment, and remand for a new punishment hearing.

## Background

In 2009, Peyronel's wife was operating an in-home daycare. The complainant, who was three years old at the time, attended the daycare each day while her parents worked. The indictment alleged that Peyronel unlawfully, intentionally, and knowingly caused the sexual organ of the complainant, a person under 14 years of age, to contact Peyronel's mouth. A jury found Peyronel guilty.

The punishment phase of the trial began on the day that the jury returned its guilty verdict. The record reflects that the trial court recessed the jury to await the arrival of a witness. During the recess, the trial court learned that a woman who was "part of the defense" had approached one of the jurors and said, "How does it feel to convict an innocent man?" But the record does not reflect who notified the judge of the woman's conduct. The trial court stated on the record that it was going to find out who made the comment and hold that person in contempt, but the record does not reflect that the trial court made any investigation or other effort to

determine who approached which juror. Instead, the record reflects that the trial court decided to respond by invoking the Rule. It stated: "Any witnesses that will testify in this punishment hearing, wait outside except for the one that is going to be testifying. Do not discuss the case amongst yourselves or with anybody else."

The State then requested that female members of Peyronel's family be excluded from the courtroom, regardless of whether they were going to testify, because the State did not want any of the jurors to feel intimidated "while having to make a decision." Peyronel's counsel responded: "[W]e'd respond to that by saying that's too broad to exclude Mr. Peyronel's wife and daughter to create the impression in the jury's mind that he has absolutely no support whatsoever here." The State re-urged its request to exclude female members of Peyronel's family: "At this point, that support seems to have crossed the line into what I consider intimidation of a juror. And based on that, I certainly - - I don't know who that family member was . . . I certainly wouldn't want that person to be in the courtroom during testimony."

The trial court said, "I agree. Nobody will stay in the courtroom while we proceed with this matter. Instruct your prospective witnesses to wait outside until such time as they can come in." The court then clarified that he was referring to "both" witnesses and gallery members. The trial court did not specify whether it was excluding both males and females, nor did it specify whether it was excluding

only members of Peyronel's family. After four witnesses testified for the State and counsel presented closing arguments, the jury deliberated and reached a verdict on sentencing that same day.

## Public Trial

In his first issue, Peyronel contends that the trial court violated his statutory and constitutional right to a public trial because it excluded his friends and family from the courtroom during the punishment phase of the trial.

### A. Standard of Review and Applicable Law

The Sixth Amendment guarantees the accused in all criminal prosecutions the right to a public trial. U.S. CONST. amend. VI; *Herring v. New York*, 422 U.S. 853, 856–57, 95, S. Ct. 2550, 2552 (1975); *Lilly v. State*, 365 S.W.3d 321, 328 (Tex. Crim. App. 2012). The Fourteenth Amendment extends this fundamental right to defendants in state criminal prosecutions. U.S. CONST. amend. XIV; *Herring*, 422 U.S. at 857, 95 S. Ct. at 2553; *In re Oliver*, 333 U.S. 257, 266–67, 68 S. Ct. 499, 504 (1948). Trial courts must take every reasonable measure to accommodate public attendance at criminal trials, and a violation of a defendant's public-trial right is a structural error that does not require a showing of harm and warrants automatic reversal. *Presley v. Georgia*, 558 U.S. 209, 215, 130 S. Ct. 721, 725 (2010); *Johnson v. United States*, 520 U.S. 461, 468–69, 117 S. Ct. 1544,

4

1549–50 (1997); *Lilly*, 365 S.W.3d at 328; *Steadman v. State*, 360 S.W.3d 499, 510 (Tex. Crim. App. 2012).

Nevertheless, "[t]he barring of some members of the public from the courtroom does not necessarily mean that an accused has been denied a public trial." *Andrade v. State*, 246 S.W.3d 217, 225 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (citing *Hernandez v. State*, 914 S.W.2d 218, 221 (Tex. App.—El Paso 1996, pet. ref'd)). This is because "[t]he right to a public trial is not absolute: It may be outweighed by other competing rights or interests, such as interests in security, preventing disclosure of nonpublic information, or ensuring that a defendant receives a fair trial." *Woods v. State*, 383 S.W.3d 775, 779 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (citations omitted); *see Hernandez v. State*, 914 S.W.2d at 222 ("Reasonable limitations on public attendance may be imposed where they are necessary to protect a state interest that outweighs the defendant's right to public scrutiny.") (citing *Mosby v. State*, 703 S.W.2d 714, 716 (Tex. App.—Corpus Christi 1985, no pet.)). But if an accused is denied the presence of his friends, the trial court must articulate on the record some compelling reason for excluding them. *Addy v. State*, 849 S.W.2d 425, 429 (Tex. App.—Houston [1st Dist.] 1993, no writ). Whether the accused is denied a public trial is based on the particular circumstances of the case. *Hernandez*, 914 S.W.2d at 221 (citing *Levine v. United States*, 362 U.S. 610, 616–17, 80 S. Ct. 1038, 1042–43 (1960)).

5

"We apply a bifurcated standard of review to the trial court's ruling on a [defendant's] public-trial claim, reviewing legal conclusions de novo and factual findings for an abuse of discretion." *See Woods*, 383 S.W.3d at 779 (citing *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002)).

## B. Analysis

### 1. Preservation of Error

The State argues that Peyronel failed to preserve this issue for appeal because he did not object that excluding his friends and family violated his right to a public trial but, rather, he only "responded" that it would be too broad to exclude his wife and daughter.

"Where a defendant, with knowledge of the closure of the courtroom, fails to object, that defendant waives his right to a public trial." *United States v. Hitt*, 473 F.3d 146, 155 (5th Cir. 2006); *see also Pena v. State*, -- S.W.3d. --, No. 01-13-00372-CR, 2014 WL 2490749, at *6 (Tex. App.—Houston [1st Dist.] June 3, 2014, no pet.) (appellant waived public trial complaint by "failing to object to the alleged closing of the trial to the public or otherwise raise the issue with the trial court"); *McEntire v. State*, 265 S.W.3d 721, 723 (Tex. App.—Texarkana 2008, no pet.) (defendant failed to preserve public-trial argument where his counsel stated that he had no objection to closing part of trial to public).

To preserve error for appeal, the complaining party must make "a timely request, objection, or motion" to the trial court. TEX. R. APP. P. 33.1(a)(1). But, error preservation "is not an inflexible concept." *Thomas v. State*, 408 S.W.3d 877, 884 (Tex. Crim. App. 2013) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). "[A]ll a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Id.*

Here, Peyronel made clear that he did not agree to the trial court's exclusion of his family and argued that exclusion would create a negative impression in the jury's eyes. Although Peyronel did not explicitly argue that exclusion of his family would abrogate his right to a public trial, we conclude that his objection was sufficient to preserve error. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (issue preserved if "there have been statements or actions on the record that clearly indicate what the judge and opposing counsel understood the argument to be"); *Lankston*, 827 S.W.2d at 909 (in issue-preservation context, there are "no technical considerations or form of words to be used"); *see also State v. Rosseau*, 396 S.W.3d 550, 555 (Tex. Crim. App. 2013) (although defendant's challenge "could have been more clearly presented," "magic language" was not required).

**2. Did the trial court violate Peyronel's right to a public trial?**

When, as here, the record reflects that the trial court ordered that "nobody will stay in the courtroom while we proceed with this matter," we regard the closure of the courtroom as a total closure. Accordingly, we apply the *Waller* test to determine whether the trial court erred in concluding that Peyronel's right to a public trial was outweighed by other considerations. *See Waller v. Georgia*, 467 U.S. 39, 45, 104 S. Ct. 2210, 2215 (1984). Under *Waller*, a trial court does not err in closing the courtroom if: (1) the party seeking closure advances an overriding interest that is likely to be prejudiced; (2) the closure is no broader than necessary to protect that interest; (3) the trial court considers reasonable alternatives to closing the proceeding; and (4) the trial court makes findings adequate to support the closure.[1] *Id.*

Under the first factor, we examine whether the State advanced an overriding interest in excluding Peyronel's family and supporters. *See id.* To satisfy this prong, there must be a "substantial probability" that the interest will be prejudiced absent the closure. *Press–Enter. Co. v. Superior Court of Cal. for Riverside Cnty.*, 478 U.S. 1, 14, 106 S. Ct. 2735, 2743 (1986).

---

[1] We note that a different standard applies when there is only a partial closure of a courtroom. In that circumstance, the question is whether there was a "substantial reason" for the partial closure. *See Andrade v. State*, 246 S.W.3d 217, 225 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).

Here, the trial court stated that a woman asked a juror, "How does it feel to convict an innocent man?" The State told the trial court that this constituted juror intimidation and that it did not want female family members of Peyronel to remain in the courtroom during testimony because it would make the jurors feel intimidated or uncomfortable. The trial court has an interest in protecting jurors from unauthorized communication that may influence their decision-making. *See* TEX. CODE CRIM. PROC. ANN. art. 36.22 ("No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court."); *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) ("The primary goal of Article 36.22 is to insulate jurors from outside influence."). Moreover, protecting jurors from intimidation is a sufficient reason for courtroom exclusion. *See Steadman*, 360 S.W.3d at 507, 511 (reversing because trial court's findings too generic, but noting that "any reticence that prospective jurors might experience on account of their discomfort to 'fully express their feelings, attitudes and possible prejudices' constitutes a legitimate jury-panel contamination concern"); *Hernandez*, 914 S.W.2d at 222 ("Protecting the jury from intimidation that would traumatize them or render them unable to perform their duties as jurors is an overriding state interest . . . ."); *see also United States ex. rel. Orlando v. Fay*, 350 F.2d 967, 971 (2d Cir. 1965) (holding the guarantee of a public trial means "only that the public must be freely admitted so long as those persons and groups

9

who make up the public remain silent and behave in an orderly fashion so that the trial may continue"). We thus conclude that the first prong of the test was satisfied because the State demonstrated a substantial probability that an overriding interest would be prejudiced absent the closure.

Under the second factor, we examine whether the closure was broader than necessary. *Waller*, 467 U.S. at 45, 104 S. Ct. at 2215. "*Presley* mandates that any closure of the courtroom 'be no broader than necessary to protect' whatever overriding interest exists to close the proceedings." *Steadman*, 360 S.W.3d at 509–10 (quoting *Presley*, 558 U.S. at 214, 130 S. Ct. at 724). Here, the record does not reflect that the trial court determined which person had the unauthorized communication with a juror. The record reflects only that the trial court was notified that it was a female member of Peyronel's family. Peyronel argues that the trial court could have ordered a more limited closure if it had conducted some investigation. We agree. The record reflects that only one woman made an improper comment to a juror. But the record reflects no attempt by the trial court to try to identify that woman and exclude only her; rather, the trial court ordered a total closure, stating "nobody" would be permitted to stay in the courtroom during the proceedings. We thus conclude that the closure was broader than necessary. *See Presley*, 558 U.S. at 214, 130 S. Ct. at 724 (closure of courtroom may not be broader than necessary to protect whatever overriding interests exists to close

10

proceedings); *Steadman*, 360 S.W.3d at 510 (appellant's right to public trial violated because closure was broader than necessary where trial court removed family members from observing voir dire before it was necessary to do so).

Under the third factor, we consider whether the trial court considered reasonable alternatives to a total closure. *Waller*, 467 U.S. at 45, 104 S. Ct. at 2215; *Presley*, 558 U.S. at 215, 130 S. Ct. at 725 ("Trial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials."). "[C]ircumstances justifying closure 'will be rare . . . and the balance of interests must be struck with special care.'" *Steadman*, 360 S.W.3d at 505 (quoting *Presley*, 558 U.S. at 213, 130 S. Ct. at 724). A closure is not justified when there are reasonable alternatives to closure that the trial court cannot "sensibly reject." *See id.* at 509; *see also Presley*, 558 U.S. at 214, 130 S. Ct. at 724–25; *Lilly*, 365 S.W.3d at 329.

In *Presley*, the Supreme Court reversed because the trial court closed the courtroom without considering reasonable alternatives. *Presley*, 558 U.S. at 215–16, 130 S. Ct. at 725 (noting specific alternatives to total closure during voir dire). The Court of Criminal Appeals has applied *Presley* in a case involving closure during voir dire and reversed because the trial court did not consider "all" reasonable alternatives. *See Steadman*, 360 S.W.3d at 509 ("That a trial court can reasonably discount *some* alternatives, however, does not insulate it from *Presley*'s

11

mandate that it be able to sensibly reject '*all* reasonable alternatives' before it can exclude the public from voir dire proceedings.") (quoting *Presley*, 558 U.S at 216, 130 S. Ct. at 725) (emphasis in original).

Here, the record does not reflect that the trial court considered all reasonable alternatives. Although the trial court initially stated that it would find out who made the comment and hold her in contempt, it apparently abandoned that approach in favor of invoking the Rule and then ordering that "nobody" could remain in the courtroom. The record does not reflect the reason that the trial court abandoned its stated initial approach—to determine who made the improper comment—in favor of a total closure. Thus, rather than taking "special care" to strike a balance between competing interests, *see Waller*, 467 U.S. at 45, 104 S. Ct. at 2215, the record reflects that the trial court, without explanation, concluded that "nobody" would remain in the courtroom. *See Presley*, 558 U.S. at 215–16, 130 S. Ct. at 725. We conclude, based on the sparse record before us, that the trial court failed to consider *all* reasonable alternatives to total closure and "sensibly reject" each of them. *See id.* (trial court must consider *all* reasonable alternatives); *Lilly*, 365 S.W.3d at 329 (same); *Steadman*, 360 S.W.3d at 509–10 (right to public trial violated where trial court failed to consider several alternatives and sensibly reject each).

Under the fourth factor, we consider whether the trial court made adequate findings to support the closure. *Waller*, 467 U.S. at 45, 104 S. Ct. at 2215. A trial court's findings regarding closure must be "specific enough that a reviewing court can determine whether the closure . . . was proper[] . . . ." *Presley*, 558 U.S. at 215, 130 S. Ct. at 725.

Peyronel contends that the trial court ordered the closure "without any clear articulation of its rationale." The record reflects that the trial court did not determine who made the comment, make findings to justify closure, or explain why lesser measures would not adequately protect the interest in preventing juror intimidation. Thus we conclude that the trial court failed to articulate "findings specific enough that a reviewing court can determine" that the courtroom closure was warranted. *See id.*; *Waller*, 467 U.S. at 48, 104 S. Ct. at 2216 (right to public trial violated because, in part, "the trial court's findings were broad and general, and did not purport to justify closure of the entire [suppression] hearing"); *Steadman*, 360 S.W.3d at 506–08, 510 (clarifying that concrete facts might include "evidence of any outburst on the part of the appellant's family members," but reversing where trial court failed to articulate a "tangible threat" based on concrete facts, citing only a broad and generic concern about possible jury panel contamination and security).

Considering the four *Waller* factors, we conclude that the trial court improperly ordered a total closure of the courtroom because it failed to first consider and sensibly reject reasonable alternatives, such as excluding only the person who made the unauthorized comment to a juror, and make adequate findings supporting the closure. *See Presley*, 558 U.S. at 215–16, 130 S. Ct. at 725 (appellant's right to public trial violated because trial court failed to consider all reasonable alternatives to closure, even assuming trial court had overriding interest in closure); *Steadman*, 360 S.W.3d at 509–10 (appellant's right to public trial violated where trial court failed to make adequate findings or consider all reasonable alternatives to closure); *Turner v. State*, 413 S.W.3d 442, 449–50 (Tex. App.—Fort Worth 2012, no pet.) (appellant's right to public trial was violated where only interest articulated to support closure was space concerns, trial court "did not consider reasonable alternative that might have accommodated appellant's family members, and did not make adequate findings to support its decision to exclude appellant's family members" from voir dire); *cf. Johnson v. State*, 137 S.W.3d 777, 779 (Tex. App.—Waco 2004, pet. ref'd) (holding appellant's right to public trial not violated because trial court held hearing outside presence of jury in which appellant's aunt testified under oath that she was the person who commented within earshot of the jury that appellant passed two polygraph tests, and record reflected that trial court excluded only appellant's aunt).

14

We sustain Peyronel's first issue.

## Modification of Judgment

In his second issue, Peyronel contends that the trial court's written judgment of conviction erroneously states that he was convicted of aggravated sexual assault of a child under six years of age. The State concedes that the judgment is incorrect in this regard.

"An appellate court has the power to correct and reform a trial court judgment 'to make the record speak the truth when it has the necessary data and information to do so.'" *Nolan v. State*, 39 S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (quoting *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd)); *see also* TEX. R. APP. P. 43.2(b) (court of appeals may "modify the trial court's judgment and affirm it as modified"). Here, the indictment[2] and the guilt-innocence jury charge reflect that Peyronel was charged with and convicted of aggravated sexual assault of a person under 14. But, the judgment states that Peyronel was convicted of the first degree felony of "agg sex asslt child <6." We sustain Peyronel's second issue and modify the trial court's judgment to reflect that appellant was convicted of aggravated sexual assault of a person under 14. *See Jackson v. State*, 288 S.W.3d 60, 64 (Tex. App.—Houston

---

[2] The State initially indicted Peyronel for aggravated sexual assault of a child younger than six, but dismissed that case and re-indicted Peyronel for aggravated sexual assault of a person under 14.

[1st Dist.] 2009, pet. ref'd) (reforming trial court's erroneous judgment stating appellant was convicted of aggravated assault against public servant to reflect appellant was convicted of aggravated assault where record showed jury found appellant guilty of only latter offense).

## Court Costs

In his third issue, Peyronel challenges the trial court's assessment of court costs in the amount of $704. He argues that the J.I.M.S. cost bill assessment is not a proper bill of costs, and that the assessment violates due process because it was never presented to him or to the trial court. The Court of Criminal Appeals has rejected these arguments. *See Johnson v. State*, 423 S.W.3d 385, 391–94 (Tex. Crim. App. 2014).

Peyronel further argues that the evidence is insufficient to support the assessment of court costs in the amount of $704. "[W]e review the assessment of court costs on appeal to determine if there is a basis for the cost, not to determine if there was sufficient evidence offered at trial to prove each cost, and traditional *Jackson* evidentiary-sufficiency principles do not apply." *Id.* at 390. We review the sufficiency of the evidence supporting the award of costs in the light most favorable to the trial court's judgment. *See Mayer v. State*, 309 S.W.3d 552, 557 (Tex. Crim. App. 2010); *Cardenas v. State*, 403 S.W.3d 377, 385, *aff'd*, 423 S.W.3d 396 (Tex. Crim. App. 2014).

16

A defendant convicted of a felony offense must pay certain statutorily mandated costs and fees. *See Johnson*, 423 S.W.3d at 389. The record shows that Peyronel was convicted of a felony in district court, supporting each of the following court costs:

(1)  $250.00 DNA record fee;[3]

(2)  $133.00 consolidated court cost for conviction of a felony;[4]

(3)  $125.00 for summoning 25 witnesses[5]

(4)  $50.00 for executing or processing an issued arrest warrant, capias, or capias pro fine;[6]

(5)  $40.00 to the clerk's office;[7]

---

[3] TEX. CODE CRIM. PROC. ANN. art. 102.020(a)(1) (West Supp. 2013) ("A person shall pay as cost of court: (1) $250 on conviction of an offense listed in Section 411.1471(a)(1), Government Code."). Section 411.1471(a)(1) applies to a defendant who is indicted or punishable under Penal Code section 22.021. TEX. CODE CRIM. PROC. ANN. art. 411.1471(a)(1)(c) (West 2012). Section 22.021 covers aggravated sexual assault of a person under 14 years of age, the offense for which Peyronel was found guilty. *See* TEX. PENAL CODE ANN. § 22.021(a)(2)(B) (West Supp. 2013).

[4] TEX. LOC. GOV'T CODE ANN. § 133.102(a)(1) (West Supp. 2013) ("A person convicted of an offense shall pay as a court cost, in addition to all other costs: $133 on conviction of a felony.").

[5] TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(2)(B)(3) (West Supp. 2013) ("A defendant convicted of a felony or a misdemeanor shall pay $5 for summoning a witness.")

[6] *Id.* art. 102.011(a)(2) ("A defendant convicted of a felony or a misdemeanor shall pay the following fees for services performed in the case by a peace officer . . . $50 for executing or processing an issued arrest warrant, capias, or capias pro fine . . . .").

(6)     $25.00 district court records preservation fee;[8]

(7)     $20.00 jury conviction fee;[9]

(8)     $10.00 "taking one bond" fee;[10]

(9)     $10.00 in commitment fees;[11]

(10)    $10.00 release fees;[12]

(11)    $6.00 for support for the judiciary;[13]

(12)    $5.00 for making an arrest without a warrant;[14]

---

[7]     *Id.* art. 102.005(a) (West 2006) ("A defendant convicted of an offense in a county court, a county court at law, or a district court shall pay for the services of the clerk of the court a fee of $40.").

[8]     *Id.* art. 102.005(f) ("A defendant convicted of an offense in a . . . district court shall pay a fee of $25 for records management and preservation services performed by the county as required by Chapter 203, Local Government Code.").

[9]     *Id.* art. 102.004(a) (West 2006) ("A defendant convicted by a jury . . . in district court shall pay a jury fee of $20.").

[10]    *Id.* art. 102.011(a)(2)(B)(5) ("A defendant convicted of a felony or misdemeanor shall pay . . . $10 for taking and approving a bond and, if necessary, returning the bond to the courthouse . . . .").

[11]    *Id.* art. 102.011(a)(2)(B)(6) ("A defendant convicted of a felony or a misdemeanor shall pay the following fees for services performed in the case by a peace officer . . . $5 for commitment or release").

[12]    *Id.*

[13]    TEX. LOC. GOV'T CODE ANN. § 133.105(a) (West 2008) ("A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to all other costs, a fee of $6 to be used for court-related purposes for the support of the judiciary.").

(13) $5.00 jury summoning fee;[15]

(14) $5.00 security fee;[16]

(15) $4.00 jury reimbursement fee;[17]

(16) $4.00 for the court technology fund;[18] and

(17) $2.00 for support of indigent defense.[19]

These fees total $704, which is the same amount of costs assessed in the judgment:

---

[14]  TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(1) ("A defendant convicted of a felony or a misdemeanor shall pay the following fees for services performed in the case by a peace officer: $5 for . . . making an arrest without a warrant").

[15]  *Id.* art. 102.011(a)(2)(B)(7) ("A defendant convicted of a felony or a misdemeanor shall pay . . . $5 for summoning a jury, if a jury is summoned.").

[16]  *Id.* art. 102.017(a) (West Supp. 2013) ("A defendant convicted of a felony offense in a district court shall pay a $5 security fee as a cost of court.").

[17]  *Id.* art. 102.0045(a) (West Supp. 2013) ("A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to all other costs, a fee of $4 to be used to reimburse counties for the cost of juror services as provided by Section 61.0015, Government Code.").

[18]  *Id.* art. 102.0169(a) (West Supp. 2013) ("A defendant convicted of a criminal offense in a . . . district court shall pay a $4 county and district court technology fee as a cost of court.").

[19]  TEX. LOC. GOV'T. CODE ANN. § 133.107(a) (West Supp. 2013) ("A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to other costs, a fee of $2 to be used to fund indigent defense representation through the fair defense account established under Section 79.031, Government Code.").

$ 250.00 (DNA record fee)
$ 133.00 (consolidated court cost for conviction of a felony)
$ 125.00 (summoning witnesses fee)
$ 50.00 (serving capias fee)
$ 40.00 (clerk's office fee)
$ 20.00 (jury conviction fee)
$ 25.00 (district court records preservation fee)
$ 10.00 (release fees)
$ 10.00 (commitment fees)
$ 10.00 (bond fee)
$ 6.00 (support judiciary fee)
$ 5.00 (jury summoning fee)
$ 5.00 (arrest without warrant fee)
$ 5.00 (security fee)
$ 4.00 (jury reimbursement fee)
$ 4.00 (court technology fee)
$ 2.00 (support of indigent defense fee)
$ 704.00

Accordingly, we hold that the evidence was sufficient to support the court costs in the amount of $704 assessed in the trial court's judgment. *See Johnson*, 423 S.W.3d at 389, 396.

We overrule Peyronel's third issue.

## Conclusion

We modify the judgment to reflect that Peyronel was convicted of aggravated sexual assault of a person under 14, affirm the judgment of conviction as modified, reverse the judgment as to punishment, and remand to the trial court for a new punishment hearing.


                                        Rebeca Huddle
                                        Justice

Panel consists of Chief Justice Radack and Justices Massengale and Huddle.

Publish. TEX. R. APP. P. 47.2(b).