# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00792-CR

**Kayla Rae Moore, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 424TH JUDICIAL DISTRICT
### NO. 41205, HONORABLE DANIEL H. MILLS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Kayla Rae Moore of the offense of possession of a controlled substance, cocaine, in an amount of one gram or more but less than four grams, and assessed punishment at seven years' imprisonment and a $2,500 fine.[1] The district court rendered judgment on the verdict and, upon the jury's recommendation, suspended imposition of the sentence and placed Moore on community supervision for ten years. In a single point of error on appeal, Moore asserts that the district court abused its discretion in denying a motion to suppress evidence that she had asserted. We will affirm the district court's judgment.

---

[1] *See* Tex. Health & Safety Code §§ 481.102(3)(D), .115(a), (c).

# BACKGROUND

The jury heard evidence that on the night of July 28, 2012, Officer Tina Harvey of the Marble Falls Police Department initiated a traffic stop on a vehicle after observing its driver commit multiple traffic violations. Harvey testified that the driver of the vehicle was identified as Kendal Edwards and the passenger was identified as Moore. According to Harvey, Moore failed to properly identify herself, providing Harvey with an incorrect middle name and date of birth. Subsequently, Harvey recounted, she discovered that Moore had an outstanding arrest warrant and proceeded to arrest her for the offense of failure to identify as a fugitive. Upon her arrest, Moore was handcuffed and placed in the back of another officer's patrol car.

Meanwhile, Harvey explained, several other officers had arrived at the scene to investigate a report that the vehicle might contain narcotics. Harvey testified that one of the officers was Deputy Jeff White of the Burnet County Sheriff's Office, who arrived with a canine unit. According to Harvey, the canine unit, a dog named Lily, sniffed the exterior of the vehicle and initially alerted on the driver's side door, where Edwards had been seated. Harvey testified that Edwards was then detained while the interior of the vehicle was searched for contraband. Harvey recounted that, although no drugs were found inside the vehicle, Lily subsequently alerted on the front passenger seat and door handle, where Moore had been seated prior to her arrest.

Harvey further testified that after Moore was placed in the patrol car, Harvey had multiple conversations with Moore advising her "that if she goes into the jail with any type of contraband, that it increases the penalty of that charge." According to Harvey, Moore repeatedly denied possessing any such contraband. However, Harvey persisted in her questioning of Moore. Over an apparent hearsay objection, Harvey testified that Moore, in response to Harvey's

2

questioning, eventually produced "a clear bag that contained a white substance which later tested positive for cocaine."[2]  Harvey also testified that she suspected the substance in the bag to be cocaine and that, upon field testing the substance, her suspicions were confirmed.  The positive test results, as well as a photograph of the bag containing the white substance, were admitted into evidence without objection.

On cross-examination, Moore elicited testimony from Harvey that Moore was not read her *Miranda* rights until "after she was taken to the police department."[3]  However, at no point during her cross-examination of Harvey did Moore raise any *Miranda*-based objection to the earlier admission of evidence relating to the drugs that Moore had produced in response to police questioning.  Instead, Moore elicited additional testimony relating to the drugs that were produced, asking Harvey, "Did you get word from Deputy White about the type of drug that was in the car?"  Harvey answered, "Yes.  Cocaine."

---

[2]  Although Moore did not explicitly state the legal basis of her objection, the context in which the objection was made indicates that Moore's complaint was based on hearsay.  Earlier, the State had attempted to elicit testimony from Harvey regarding specific statements that Moore had made in response to police questioning.  Moore raised an explicit hearsay objection at that point, arguing, "I don't think [Harvey] should be referring to what the defendant states.  She can only state what she [Harvey] stated, not what the defendant said in response to the question."  The district court sustained that objection.  Shortly thereafter, the State asked Harvey what Moore had "produced" in response to police questioning, and Moore objected on the ground that this was a "backdoor" method of "trying to get [in] what [Moore] stated."  Moore added, "I know he's not asking anything about what was said, but the actions were in response to questioning, and that's an interrogation.  No rights were—have been read at this point."  The district court overruled the objection as follows:  "Well, the statements are not being offered for the truth of the matter asserted.  They're being offered to show what this officer had done.  And so for that reason, I'll overrule the objection."  Thus, the district court indicated by its ruling that it understood the objection to based on hearsay, and, following that ruling, Moore did not dispute this understanding or attempt to clarify the nature of her objection.

[3]  *See Miranda v. Arizona*, 384 U.S. 436 (1966).

The State next called Deputy White, who provided additional testimony regarding the search of the vehicle by the canine unit. During cross-examination, Moore asked White if he had read Moore her *Miranda* rights following her arrest. White testified that he had not. Moore then asked White if he had questioned Moore following her arrest and asked her to "turn over the narcotics that she had hidden on her person to Officer Harvey." White testified that he did. At that point, Moore, for the first time, moved to suppress the evidence that had been admitted earlier, arguing the following:

> Your Honor, at this time we object to Officer Harvey's testimony from the previous, talking about turning over the drugs. The drugs should be suppressed. She turned over those drugs in response to a question that was [asked] while she was detained and being interrogated, and therefore all the drugs and evidence arrived [sic] from that search should be suppressed.

The district court denied the motion to suppress.

Later during trial, Jeff Keverline, a chemist at the Texas Department of Public Safety Crime Laboratory, testified that the substance within the bag that was obtained from Moore tested positive for cocaine. Immediately thereafter, the State offered into evidence the cocaine itself, and Moore renewed her earlier objection to the admissibility of the evidence, which the district court again denied. However, the State subsequently withdrew its offer to introduce the cocaine itself into evidence and instead offered the laboratory report, which showed that the substance had tested positive for cocaine. Moore did not object to the laboratory report.

Moore testified in her defense. According to Moore, when the traffic stop occurred, Edwards had told her that he had "some type of drugs on him," had threatened Moore that he would hurt her children if she did not take the drugs from him, and had placed the drugs in her pants.

4

Moore acknowledged that she had allowed Edwards to do so. An affidavit by Edwards was admitted into evidence, in which Edwards claimed "full responsibility" for the drugs found on Moore and averred that they belonged to him.

The State called Edwards on rebuttal. Edwards denied that he had drugs in his possession on the date in question and also denied Moore's claims that he had threatened her or placed the drugs in her pants. When asked to explain why he had signed the affidavit claiming "full responsibility" for the drugs, Edwards testified, "I only signed that out of stress because [Moore] was calling and crying me every other day about this situation."

After hearing this and other evidence, the jury found Moore guilty as charged and assessed punishment as noted above. The district court rendered judgment on the verdict and placed Moore on community supervision. This appeal followed.

## ANALYSIS

In her sole point of error, Moore asserts that the district court abused its discretion in denying her motion to suppress. According to Moore, the cocaine should have been suppressed because it was produced by Moore during custodial interrogation, and the officers had neglected to read Moore her *Miranda* rights prior to that interrogation.

We must first address whether Moore preserved error on this point in the court below.[4] A motion to suppress is a specialized objection to the admissibility of evidence.[5] As

---

[4] *See Ford v. State*, 305 S.W.3d 530, 532-33 (Tex. Crim. App. 2009) (observing that "a court of appeals should review preservation of error on its own motion"); *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005) (stating that "preservation of error is a systemic requirement that must be reviewed by the courts of appeals regardless of whether the issue is raised by the parties"); *see also Meadoux v. State*, 325 S.W.3d 189, 193 n.5 (Tex. Crim. App. 2010) (noting that systemic

5

such, a motion to suppress must meet all of the requirements of an objection, including that it be both timely and sufficiently specific to inform the trial court of the complaint.[6] Additionally, the complaint on appeal must comport with the specific objection made at trial.[7] "The Court of Criminal Appeals has 'consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence[,] . . . even though the error may concern a constitutional right of the defendant.'"[8] And, if a complaint is forfeited in the court below, the reviewing court should not address the merits of that issue.[9]

To be timely, an objection to the admissibility of evidence must be raised at the "earliest possible opportunity," or as soon as the ground for the objection becomes apparent.[10] In

nature of error preservation "means only that a court of appeals may not *reverse* a judgment of conviction without first addressing any issue of error preservation" but that court of appeals may affirm judgment of conviction without addressing error preservation).

[5] *See Black v. State*, 362 S.W.3d 626, 633 (Tex. Crim. App. 2012); *Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981) (op. on reh'g); *Moreno v. State*, 409 S.W.3d 723, 727 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd).

[6] *See* Tex. R. App. P. 33.1; *Krause v. State*, 243 S.W.3d 95, 102 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *Johnson v. State*, 171 S.W.3d 643, 647 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

[7] *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014).

[8] *Moreno*, 409 S.W.3d at 728 (quoting *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002)).

[9] *See Wilson v. State*, 311 S.W.3d 452, 473-74 (Tex. Crim. App. 2010); *Ford*, 305 S.W.3d at 532.

[10] *See Yazdchi*, 428 S.W.3d at 844; *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *Lagrone v. State*, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997); *Marini v. State*, 593 S.W.2d 709, 714 (Tex. Crim. App. 1980); *Smith v. State*, 456 S.W.2d 90, 91 (Tex. Crim. App. 1970).

other words, the objection should be made "as soon as the [objecting party] knows or should know that an error has occurred."[11] This requirement is particularly important in a jury trial where, "if the objection is not made early enough and a ruling is not obtained, the jury is able to hear evidence which it might never have heard at all."[12]

Here, the earliest possible opportunity for Moore to have objected to the absence of *Miranda* warnings was when Officer Harvey first testified that Moore, in response to police questioning, had produced "a clear bag that contained a white substance which later tested positive for cocaine." Although Moore objected to this testimony, the apparent basis of her complaint was hearsay, and that is how the district court construed her objection.[13] At that time, Moore did not

---

[11] *Lackey v. State*, 364 S.W.3d 837, 843 (Tex. Crim. App. 2012); *Hollins v. State*, 805 S.W.2d 475, 476 (Tex. Crim. App. 1991) (citing *Thompson v. State*, 691 S.W.2d 627, 635) (Tex. Crim. App. 1984)); *Woods v. State*, 383 S.W.3d 775, 780 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

[12] *Garza v. State*, 126 S.W.3d 79, 83 (Tex. Crim. App. 2004).

[13] *See* n.2, *supra*. To the extent that Moore's objection could be construed to encompass more than one legal argument, it was Moore's obligation to make the precise nature of her objection known to the district court. *See Resendez v. State*, 306 S.W.3d 308, 313-14 (Tex. Crim. App. 2009) (explaining that it is "[t]he parties, not the judge," who "are responsible for the correct application of evidentiary rules" and that, "in order to preserve a complaint for appeal, the complaining party must have done everything necessary to bring the relevant evidentiary rule and its precise and proper application to the trial court's attention"; also observing that "a complaint that could, in isolation, be read to express more than one legal argument will generally not preserve all potentially relevant arguments for appeal" and that "[o]nly when there are clear contextual clues indicating that the party was, in fact, making a particular argument will that argument be preserved"); *see also Clark v. State*, 365 S.W.3d 333, 339-40 (Tex. Crim. App. 2012) ("In determining whether a complaint on appeal comports with a complaint made at trial, we look to the context of the objection and the shared understanding of the parties at the time."). Here, when the district court overruled Moore's objection, the court referenced the definition of hearsay, thus indicating that it understood Moore's complaint to be based on that ground. Moore said nothing in response to the district court's ruling. Thus, if Moore's objection was based on a legal ground other than hearsay, the record reflects that she failed to apprise the district court of that ground. *See Vasquez v. State*, 483 S.W.3d 550, 554-56 (Tex. Crim. App. 2016).

argue that the evidence should be suppressed due to the absence of *Miranda* warnings. Nor did she raise any such argument or objection when Harvey later testified during cross-examination that Moore was not read her *Miranda* rights until "after she was taken to the police department." At that time, if not earlier, the grounds for Moore's *Miranda*-based objection should have been apparent, but Moore did not move to suppress the drugs at any point during Harvey's testimony, even though Harvey was the witness who had testified that Moore had produced the drugs in response to police questioning. Instead, Moore waited to move to suppress the drugs until during her cross-examination of Deputy White, at which point other evidence concerning the drugs had already been admitted.[14] By failing to raise her objection at the earliest possible opportunity, we conclude that Moore failed to preserve error, if any, in the district court's denial of her motion to suppress.[15]

Additionally, even if Moore had properly preserved her complaint below, and even if the district court had abused its discretion in denying the motion to suppress, we could not conclude on this record that Moore was harmed by that denial. Because the error, if any, concerned

---

[14] For example, evidence had been admitted tending to show that the suspected drugs had field-tested positive for cocaine, and a photo of the bag containing the substance was also admitted. Additionally, as discussed earlier, even after Harvey had testified that the police had not read Moore her *Miranda* rights upon her arrest, Moore proceeded to elicit additional testimony from Harvey regarding the drugs, asking her to identify the "type of drug" to which the canine unit had alerted.

[15] *See, e.g.*, *Wilson*, 71 S.W.3d at 348-50; *Cannon v. State*, 691 S.W.2d 664, 674 (Tex. Crim. App. 1985); *Marini*, 593 S.W.2d at 714; *Garcia v. State*, 573 S.W.2d 12, 16 (Tex. Crim. App. 1978); *Sanders v. State*, 387 S.W.3d 680, 686-87 (Tex. App.—Texarkana 2012, pet. dism'd); *Ratliff v. State*, 320 S.W.3d 857, 860-61 (Tex. App.—Fort Worth 2010, pet. ref'd); *Tell v. State*, 908 S.W.2d 535, 543-44 (Tex. App.—Fort Worth 1995, no pet.); *Thomas v. State*, 884 S.W.2d 215, 216-17 (Tex. App.—El Paso 1994, pet. ref'd); *Turner v. State*, 642 S.W.2d 216, 217 (Tex. App.—Houston [14th Dist.] 1982, no pet.); *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("Our rule . . . is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.").

a violation of Moore's constitutional rights, the error would be harmless if, after reviewing the record as a whole, we determined "beyond a reasonable doubt that the error did not contribute to the conviction or punishment."[16] In that analysis, we are to focus "not upon the perceived accuracy of the conviction or punishment, but upon the error itself in the context of the trial as a whole, in order to determine the likelihood that it genuinely corrupted the fact-finding process."[17] In other words, "the question for the reviewing court is not whether the jury verdict was supported by the evidence" but whether "the error adversely affected 'the integrity of the process leading to the conviction.'"[18] Nevertheless, the presence of "overwhelming evidence of guilt is a factor to be considered."[19] Other factors to consider include the nature of the error, whether the error was emphasized by the State, the probable implications of the error, and the weight the jury would likely have assigned to it in the course of its deliberations.[20]

Here, the evidence that Moore sought to suppress were the drugs that she gave to the officers in response to police questioning. However, this was not a case in which Moore's physical possession of the drugs was disputed. The disputed issue at trial was whether Moore's possession

---

[16] Tex. R. App. P. 44.2(a); *see Jones v. State*, 119 S.W.3d 766, 776-77 (Tex. Crim. App. 2003); *Rodriguez-Flores v. State*, 351 S.W.3d 612, 631 n.26 (Tex. App.—Austin 2011, pet. ref'd); *Campbell v. State*, 325 S.W.3d 223, 237-38 (Tex. App.—Fort Worth 2010, no pet.).

[17] *Snowden v. State*, 353 S.W.3d 815, 819 (Tex. Crim. App. 2011); *Friend v. State*, 473 S.W.3d 470, 482 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd).

[18] *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007) (quoting *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989)).

[19] *Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002); *Friend*, 473 S.W.3d at 482.

[20] *Snowden*, 353 S.W.3d at 822; *Howard v. State*, 482 S.W.3d 249, 260 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd).

9

of the drugs was justified or should be excused under the circumstances. Specifically, Moore's defensive theory was that she took possession of the drugs only after being threatened by Edwards, i.e., that she was under duress.[21] As counsel for Moore explained during his opening statement:

> She takes the drugs [from Edwards]. She's scared. You'll hear evidence she's shaking, she's scared, she doesn't know what to do. . . . The drugs were on her. She had no idea that they were there. . . . She's scared of physical threats that [Edwards] may pose. She makes a split decision, takes the drugs, puts them down her pants, and the police find her, and then they arrest her. All these facts are going to be undisputed. She acted in a reasonable manner. She had a split second. She didn't have weeks to make this decision. The crime that she was charged with was possession of drugs. She didn't go rob somebody or beat up somebody. She didn't do anything. She simply put it down her pants.

Moore advanced this theory throughout trial, both before and after the district court denied her motion to suppress. We also observe that the parties' emphasis during their closing statements was not on whether Moore had physical possession of the drugs, which, as the State argued, was "uncontroverted," but on whether Moore's possession was voluntary and on whether the defense of duress applied under the circumstances of this case. In fact, counsel for Moore began his closing statement by conceding that Moore "had the drugs on her. That's possession," and then proceeded to argue why Moore's possession should be excused under the facts of this case. On this record, we are convinced beyond a reasonable doubt that any error in admitting evidence related to the drugs

---

[21] Duress is "a confession-and-avoidance or 'justification' type of defense" that "requires appellant to first admit that [she] 'engaged in the proscribed conduct' by admitting to all elements of the underlying offense, then claim that [her] commission of the offense is justified because of other facts." *Rodriguez v. State*, 368 S.W.3d 821, 824 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see* Tex. Penal Code § 8.05(a) ("It is an affirmative defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another.").

that Moore produced in response to police questioning did not contribute to Moore's conviction or punishment.

We overrule Moore's sole point of error.

## CONCLUSION

We affirm the judgment of the conviction.

_____

Bob Pemberton, Justice

Before Chief Justice Rose, Justices Pemberton and Bourland

Affirmed

Filed:   June 9, 2016

Do Not Publish

11