PD-1183-15

PD-1183-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/11/2015 10:34:26 AM
Accepted 9/14/2015 4:24:54 PM
ABEL ACOSTA
CLERK

No._____

In the
Court of Criminal Appeals

◆

**No. 01-14-00884-CR**
In the Court of Appeals for the
First District of Texas at Houston

◆

**No. 203728**
In the County Court at Law No. 3
Brazoria County, Texas

◆

**ERIK FORREST FRIEND**
*Appellant*
V.
**THE STATE OF TEXAS**
*Appellee*

◆

STATE'S PETITION FOR DISCRETIONARY REVIEW

◆

**JERI YENNE**
District Attorney, Brazoria County

**MICHELLE R. TOWNSEND**
Assistant District Attorney, Brazoria County
State Bar Number: 24049295

**AARON PERRY**
**RACHEL SCHNEIDER**
Assistant District Attorneys, Brazoria County

111 E. Locust, Suite 408A
Angleton, Texas 77515
Telephone: (979) 864-1230
Facsimile: (979) 864-1525

*Counsel for Appellee*

FILED IN
COURT OF CRIMINAL APPEALS

September 14, 2015

ABEL ACOSTA, CLERK

ORAL ARGUMENT REQUESTED

# IDENTIFICATION OF THE PARTIES

Pursuant to TEX. R. APP. P. 68.4(a), a complete list of the names of all parties and counsel follows:

| | |
|---|---|
| *Appellant or criminal defendant:* | **Erik Forrest Friend** |
| *Counsel for Appellant on Appeal:* | **Brian W. Wice**<br>Attorney at Law<br>The Lyric Centre<br>440 Louisiana, Suite 900<br>Houston, Texas 77002-1635 |
| *Counsel for the State on Appeal:* | **Jeri Yenne,**<br>Assistant District Attorney<br>**Michelle R. Townsend,**<br>Assistant District Attorney<br>111 E. Locust, Suite 408A<br>Angleton, Texas 77515 |
| *Counsel for Appellant at Trial:* | **Steve O. Gonzalez,**<br>**Kristina Urban,**<br>Attorneys at Law<br>1520 Texas 6<br>Alvin, Texas 77511<br><br>**Jed Silverman,**<br>Attorney at Law<br>1221 Studewood Street<br>Houston, Texas 77008 |
| *Counsel for the State at Trial:* | **Aaron Perry**<br>**Rachel Schneider,**<br>Assistant District Attorneys<br>111 E. Locust, Suite 408A<br>Angleton, Texas 77515 |
| *Presiding Judge:* | **The Hon. Jeremy Warren** |

# TABLE OF CONTENTS

IDENTIFICATION OF THE PARTIES ................................................................ i

TABLE OF CONTENTS................................................................................. ii

INDEX OF AUTHORITIES............................................................................ iii

STATEMENT REGARDING ORAL ARGUMENT.......................................... v

STATEMENT OF THE CASE........................................................................ vi

STATEMENT OF THE PROCEDURAL HISTORY ........................................ vi

GROUNDS FOR REVIEW ............................................................................ 1

      The court of appeals erred by holding that an accused may selectively invoke the Fifth Amendment right to remain silent during custodial interrogation and erred by holding that an accused's ambiguous responses in his written statement amounted to an invocation of the Fifth Amendment right to remain silent.

      The court of appeals erred when it departed from well-settled authority to misapply the standard for reviewing harm from constitutional error set forth in Rule 44.2(a).

ARGUMENT................................................................................................. 1

PRAYER FOR RELIEF ............................................................................... 12

CERTIFICATES OF SERVICE AND COMPLIANCE .................................. 13

# INDEX OF AUTHORITIES

## CASES

*Anderson v. State,*
No. 02-05-00169-CR, 2006 WL 744272 (Tex. App.—Fort Worth,
Mar. 23, 2006, pet. dism'd) (mem. op., not designated for publication) .......... 4, 6

*Berghuis v. Thompkins,*
560 U.S. 370 (2010) ................................................................................. 5, 6, 10

*Connecticut v. Barrett,*
479 U.S. 523 (1987) ....................................................................................... 6

*Dowthitt v. State,*
931 S.W.2d 244 (Tex. Crim. App. 1996) ..................................................... 4, 7

*Esquivel v. State,*
No. 04–08–00730–CR, 2009 WL 3222626 (Tex. App.—San Antonio
Oct. 7, 2009, no pet.) (mem. op., not designated for publication) ...................... 8

*Franks v. State,*
90 S.W.3d 771 (Tex. App.—Fort Worth 2002, no pet.) ................................... 8

*Friend v. State,*
___ S.W.3d ___, No. 01-14-00884-CR, 2015 WL 5026078
(Tex. App.—Houston [1st Dist.], delivered August 25, 2015) ................... passim

*Griffin v. State,*
765 S.W.2d 422 (Tex. Crim. App. 1989) ................................................... 5, 10

*Hardie v. State,*
807 S.W.2d 319 (Tex. Crim. App. 1991) ....................................................... 7

*Hildebrand v. State,*
No. 14-06-00531-CR, 2007 WL 5659038 (Tex. App.—Houston [14th Dist.],
Oct. 18, 2007, no pet.) (mem. op., not designated for publication) .................. 4, 6

*Kupferer v. State,*
408 S.W.3d 485 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) ................. 8

*Mayes v. State,*
8 S.W.3d 354 (Tex. App.—Amarillo 1999, no pet.) ........................................ 8

*Michigan v. Tucker,*
417 U.S. 433 (1974) ....................................................................................... 5

*Miranda v. Arizona,*
   384 U.S. 436 (1966) ........................................................................ 9

*Montgomery v. State,*
   810 S.W.2d 372 (Tex. Crim. App. 1990) (op. on reh'g) .................. 10

*Ramos v. State,*
   245 S.W.3d 410 (Tex. Crim. App. 2008) ......................................... 9

*Snowden v. State,*
   353 S.W.3d 815 (Tex. Crim. App. 2011) ....................................... 12

*Williams v. State,*
   257 S.W.3d 426 (Tex. App.—Austin 2008, pet. ref'd) ..................... 9

*Williams v. State,*
   272 S.W.3d 614 (Tex. Crim. App. 2008) ..................................... 7, 9

## RULES

TEX. R. APP. P. 44.2(a) ................................................................ 1, 10, 12

TEX. R. APP. P. 66.3 ............................................................................. 1

TEX. R. APP. P. 66.3(a) ....................................................................... 2

TEX. R. APP. P. 66.3(b) ....................................................................... 2

TEX. R. APP. P. 66.3(c) ....................................................................... 2

TEX. R. APP. P. 66.3(f) ....................................................................... 2

TEX. R. APP. P. 68.2(a) ...................................................................... vi

TEX. R. APP. P. 68.4(a) ........................................................................ i

TEX. R. APP. P. 68.4(d) ....................................................................... v

TEX. R. APP. P. 9.4(i) ........................................................................ 13

# STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 68.4(d), the State requests oral argument because this case presents the important issue of whether an accused may selectively invoke his Fifth Amendment right to remain silent during custodial interrogation after being given *Miranda*[1] warnings and voluntarily waiving those rights. Additionally, oral argument would be helpful because it would allow the parties to respond to any concerns or questions of this Court.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

# TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:

## STATEMENT OF THE CASE

Appellant was charged by information with the misdemeanor offense of driving while intoxicated. (CR 8). A jury found him guilty and, pursuant to the jury's punishment verdict, the judge sentenced appellant to confinement for 30 days in the Brazoria County Jail and a $750 fine, probated for 15 months. (CR 132-33, 144-45; RR V 63-64, 86-87, RR VI 4-9).

## STATEMENT OF THE PROCEDURAL HISTORY

On August 25, 2015, the lower court of appeals issued an opinion reversing the judgment of the trial court and remanding the case for a new trial. *Friend v. State*, ___ S.W.3d ___, No. 01-14-00884-CR, 2015 WL 5026078 (Tex. App.—Houston [1st Dist.], delivered August 25, 2015). This petition for discretionary review is timely if filed by September 24, 2015. See TEX. R. APP. P. 68.2(a).

## GROUNDS FOR REVIEW

1.  The court of appeals erred by holding that an accused may selectively invoke the Fifth Amendment right to remain silent during custodial interrogation and erred by holding that an accused's ambiguous responses in his written statement amounted to an invocation of the Fifth Amendment right to remain silent.

2.  The court of appeals erred when it departed from well-settled authority to misapply the standard for reviewing harm from constitutional error set forth in Rule 44.2(a). *See* TEX. R. APP. P. 44.2(a).

## ARGUMENT

This petition for discretionary review should be granted because it presents the novel intersection of well-settled principles regarding the invocation of the Fifth Amendment privilege against self-incrimination. *See* TEX. R. APP. P. 66.3. The Fifth Amendment right to remain silent cannot be selectively invoked by a defendant testifying at trial. It also must be unequivocally invoked during custodial interrogation to terminate the conversation between a warned defendant who has previously waived his rights and law enforcement such that both the invocation and any subsequent conduct or replies become inadmissible. By holding that a warned defendant voluntarily conversing with law enforcement could selectively invoke his right to remain silent in his written statement and that only those portions of his statement constituting invocations were inadmissible, the

court of appeals decided an important question of state and federal law that has not been, but should be decided by this Court. *See* TEX. R. APP. P. 66.3(b). The lower court's decision also conflicts with the requirements, as articulated by the United States Supreme Court and this Court and followed by other courts of appeal, that the Fifth Amendment right to remain silent may not be selectively invoked and that any invocation must be unequivocal. *See* TEX. R. APP. P. 66.3(a), (c).

Additionally, when considering whether appellant was harmed pursuant to Rule 44.2(a), the court of appeals conducted its analysis contrary to applicable decisions of this Court and so far departed from the accepted and usual course of judicial proceedings as to call for an exercise of this Court's power of supervision. *See* TEX. R. APP. P. 66.3(f).

After careening the wrong way down a crowded beach on the 4th of July, admitting to consuming alcohol, and exhibiting numerous other signs of intoxication once engaged by law enforcement, appellant was arrested for driving while intoxicated. (RR III 41-46, 98-103, 167-69, 174-95; State's Exhibit 3). Appellant refused to submit both breath and blood specimens but did participate in an interview with the arresting officer and provided a signed, written statement as a result of that interview. (RR III 195-99, 202-09; RR VII State's Exhibit 2; State's Exhibit 3). It is appellant's responses in this written statement, admitted as State's Exhibit 2, which are at issue in this petition.

2

Prior to speaking with police, appellant was informed of his rights twice verbally and again writing. (RR III 200, 203, 216-17; RR VII State's Exhibit 2; State's Exhibit 3). The following warnings appear at the top of State's Exhibit 2 and were read to appellant by the arresting officer before the start of the interview:

1. You have the right to remain silent and not make any statement at all and any statement you make may be used against you at your trial;
2. Any statement you make may be used as evidence against you in court;
3. You have the right to have a lawyer present to advise you prior to and during any questioning;
4. If you are unable to employ a lawyer, you have the right to have a lawyer appointed to advise you prior to and during any questioning; and
5. You have the right to terminate this interview at any time.

(RR III 203; RR VII State's Exhibit 2). Appellant indicated that he understood the warnings and knowingly, intelligently, and voluntarily waived his right to remain silent by signing the waiver in State's Exhibit 2 and by voluntarily speaking to law enforcement. (RR III 203, 209-10; RR VII State's Exhibit 2); *see also Friend*, ___ S.W.3d ___, No. 01-14-00884-CR, 2015 WL 5026078, at *6.

Appellant substantively replied to all questions asked of him until the officer asked if appellant had been drinking. (RR VII State's Exhibit 2). Appellant replied that he was "[n]ot saying anything to that one." (RR VII State's Exhibit 2). Four more questions were asked regarding the type, amount, and time of appellant's alcohol consumption. (RR VII State's Exhibit 2). Appellant replied to

3

each that he was "not saying" but then continued to converse concerning other topics. (RR VII State's Exhibit 2). At the end of the conversation, appellant signed his statement containing these "not saying" responses as well as his written warnings and waiver of rights. (RR III 203209; RR VII State's Exhibit 2).

***Ground #1: Ambiguous, selective responses in an accused's written statement are not an unequivoal invocation of the Fifth Amendment right to remain silent. Accordingly, it is not an abuse of discretion for a trial court to admit such statements into evidence and it was error for the lower court to hold otherwise.***

The recitation of the law applicable to this case by the court of appeals was accurate but incomplete. *Friend v. State,* ___ S.W.3d ___, No. 01-14-00884-CR, 2015 WL 5026078, at *5-6 (Tex. App.—Houston [1st Dist.], delivered August 25, 2015). Specifically, the lower court failed to allow for the requirement that the assertion of an accused's constitutional right to remain silent cannot be selective and must be unequivocal. *Dowthitt v. State,* 931 S.W.2d 244, 257 (Tex. Crim. App. 1996); *Hildebrand v. State,* No. 14-06-00531-CR, 2007 WL 5659038, at *8 (Tex. App.—Houston [14th Dist.], Oct. 18, 2007, no pet.) (mem. op., not designated for publication); *Anderson v. State,* No. 02-05-00169-CR, 2006 WL 744272, at *2 (Tex. App.—Fort Worth, Mar. 23, 2006, pet. dism'd) (mem. op., not designated for publication).

Warnings and invocations serve one end: to show that an accused's conversation with law enforcement, as a whole, was voluntary. *See Michigan v. Tucker,* 417 U.S. 433, 444 (1974) (prophylactic *Miranda* warnings are not

4

themselves rights protected by the Constitution but are instead measures to ensure that the right against compulsory self-incrimination is protected); *Griffin v. State*, 765 S.W.2d 422, 428-29 (Tex. Crim. App. 1989) (warnings are measures designed to ensure an accused has intelligently, knowingly and voluntarily waived his Fifth Amendment right and thus dispel possibility of official "compulsion"). Accordingly, when a defendant is warned, and thus is aware of his rights, then voluntarily waives those rights, anything he chooses to say is presumptively admissible. He can confess, or he can merely imply through his refusal to answer any given question that the answer would not be favorable; regardless, there is no reason to exclude any statement made during a voluntary conversation. *See Berghuis v. Thompkins*, 560 U.S. 370, 385 (2010) ("As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford.").

Likewise, just as a defendant cannot take the stand then pick and choose what to answer on cross-examination, he cannot selectively invoke his right to remain silent during a custodial interrogation. *See Franklin v. State*, 606 S.W.2d 818, 825 (Tex. Crim. App. 1978) (citing *Fitzpatrick v. United States*, 178 U.S. 304 (1900); *Brown v. United States*, 356 U.S. 148 (1958)) ("long been recognized that where an accused waives his privilege to remain silent and takes the stand, he may

be cross-examined upon his testimony with the same latitude as would be exercised in the case of an ordinary witness"). Appellant did not clearly and consistently assert that he was "not saying" anything else to the arresting officer. (RR III 200, 203, 216-17; RR VII State's Exhibit 2; State's Exhibit 3). Instead, the very tenor of appellant's answers indicates his wish to skirt a particular topic, not terminate the conversation in its entirety. (RR VII State's Exhibit 2) (appellant replied he was "not saying anything *to that one*") (emphasis added).

Appellant answered questions selectively, which he was free to do, but the right to remain silent cannot be selectively invoked. *Anderson*, No. 02-05-00169-CR, 2006 WL 744272, at *2 (citing *Connecticut v. Barrett*, 479 U.S. 523, 529 (1987)) (holding trial court did not abuse discretion by admitting portion of the statement in which the defendant refused to answer specific questions while answering others because "an accused may not selectively invoke his right to remain silent"); *Hildebrand*, No. 14-06-00531-CR, 2007 WL 5659038, at *8 (silence with respect to some questions while continuing to respond to others did not constitute unambiguous and unequivocal invocation of right to remain silent). Thus, his responses, both substantive and evasive, were admissible. *See Thompkins*, 560 U.S. at 385. Accordingly, the court of appeals erred by holding that appellant could selectively invoke the right to remain silent during his

voluntary conversation with law enforcement. *Friend*, ___ S.W.3d ___, No. 01-14-00884-CR, 2015 WL 5026078, at *7.

It is only when an accused seeks to terminate the conversation that his invocation of the Fifth Amendment right and any subsequent statements become inadmissible. *Williams v. State*, 272 S.W.3d 614, 614 (Tex. Crim. App. 2008); *Hardie v. State*, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991). The test for whether an accused is terminating an interview with law enforcement by asserting his Fifth Amendment right against self-incrimination is simple: was the accused's invocation of his right to remain silent unequivocal? *Dowthitt*, 931 S.W.2d at 257.

The lower court avers that by replying as he did appellant "could hardly have been clearer" in his alleged assertion of his right to remain silent. *Friend*, ___ S.W.3d ___, No. 01-14-00884-CR, 2015 WL 5026078, at *7. Contrary to this view, however, are the facts that appellant never sat silently in response to a question he wished to forego answering and never clearly stated that he wished to invoke his right to remain silent and terminate the interview. (RR III 203, 209; RR VII State's Exhibit 2). Appellant answered some questions, was coy about others, then returned to providing candid responses. *Id.* Thus, contrary to the lower court's pronouncement, appellant's responses could hardly have been a more equivocal attempt to invoke his right to remain silent. *See Dowthitt*, 931 S.W.2d at 257 (defendant's declaration "I can't say more than that. I need to rest" not an

7

unambiguous invocation of right to remain silent); *Kupferer v. State*, 408 S.W.3d 485, 490 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (the statement, "I really don't want to talk about it," not an unambiguous expression of desire to remain silent); *Franks v. State*, 90 S.W.3d 771, 786-87 (Tex. App.—Fort Worth 2002, no pet.) (defendant's response of "I don't want to talk anymore. I'm tired." not unambiguous invocation of his rights); *Mayes v. State*, 8 S.W.3d 354, 359 (Tex. App.—Amarillo 1999, no pet.) (statement by defendant that "she did not know if she wanted to talk" not an unambiguous assertion of right to remain silent); *see also Esquivel v. State*, No. 04-08-00730-CR, 2009 WL 3222626, at *11 (Tex. App.—San Antonio Oct. 7, 2009, no pet.) (mem. op., not designated for publication) (suspect's statement that he was "done talking" not unambiguous invocation of right to remain silent because defendant's conduct was inconsistent with his statement when, immediately after suspect said he was "done talking," he continued talking).

The lower court arrived at its flawed result in part by attempting to draw an artificial distinction between the right to remain silent and the right to terminate an interview. *Friend*, ___ S.W.3d ___, No. 01-14-00884-CR, 2015 WL 5026078, at *6. But these are not two separate rights; the right to terminate exists as a vehicle to honor the right to remain silent when an accused who has previously waived this right changes his mind and decides to invoke the protections of the Fifth

8

Amendment. *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966); *Williams*, 272 S.W.3d at 614; *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008); *Kupferer*, 408 S.W.3d at 489; *Williams v. State*, 257 S.W.3d 426, 432 (Tex. App.—Austin 2008, pet. ref'd).

Once appellant was warned and waived his rights, a voluntary conversation with law enforcement began. Just as an accused cannot selectively invoke his Fifth Amendment right to remain silent on the witness stand, so too an accused should not be allowed to selectively invoke his right to remain silent during custodial interrogation. Thus, once a warned defendant has begun voluntarily conversing with law enforcement, his only option to avoid answering some questions is to refuse to answer all questions, *i.e.*, to terminate the conversation by unequivocally invoking his Fifth Amendment right to remain silent.

While appellant's "not saying" responses may clearly show a desire not to answer those questions having to do with alcohol consumption, they do not show a desire to answer no questions and terminate the conversation. As such, appellant did not unequivocally invoke his right to remain silent and the entirety of his statement was admissible.

For these reasons, the court of appeals erred by finding that appellant's answers to some questions in his written statement were admissible while his responses to questions concerning "the potentially incriminating topic of alcohol

consumption" were not. *Friend*, ___ S.W.3d ___, No. 01-14-00884-CR, 2015 WL 5026078, at *7-8. This holding not only muddles the requirements surrounding the invocation of the right to remain silent but misconstrues the purpose of warnings and invocations. Essentially, by holding as it did, the lower court erroneously found that appellant's statement was voluntary and therefore admissible, then became compelled (with respect to questions concerning alcohol consumption) and therefore inadmissible, then returned to being voluntary and admissible. *See id*; *see also Thompkins*, 560 U.S. at 385; *Griffin*, 765 S.W.2d at 428-29.

Finally, a trial court's determination concerning the admissibility of evidence is reviewed for abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 390-91 (Tex. Crim. App. 1990) (op. on reh'g). The trial court's decision to admit appellant's "not saying" responses was a valid exercise of this broad discretion. *Id*. Therefore, even though the lower court would have reached a different result, it impermissibly intervened because the trial court's ruling is within the zone of reasonable disagreement. *Id*. at 391-92.

***Ground #2: Rule 44.2(a) requires a reviewing court to neutrally weigh all applicable factors when deciding whether a defendant has been harmed by constitutional error. See* TEX. R. APP. P. 44.2(a). *It was error for the court of appeals to disregard factors weighing in favor of finding any error was harmless.***

A review of the record to determine whether error of a constitutional dimension has affected a jury's verdict should be neutral and impartial. *Harris v. State*, 790 S.W.2d 568, 586 (Tex. Crim. App. 1989). Despite acknowledging this

is so, the court of appeals disregarded factors intimating that the alleged error in the admission of State's Exhibit 2 was harmless and persisted against the body of evidence in the record proving harmlessness to find that the admission of appellant's "not saying" responses in State's Exhibit 2 contributed to the jury's guilty verdict. *Friend*, ___ S.W.3d ___, No. 01-14-00884-CR, 2015 WL 5026078, at *9-12.

The lower court acknowledged the strength of the State's evidence establishing appellant was intoxicated. *Friend*, ___ S.W.3d ___, No. 01-14-00884-CR, 2015 WL 5026078, at *9-10. It also recognized that while appellant's "not saying" replies were referenced during the prosecutor's opening statement and closing argument, these references were brief. *Id.* at *11-12.

Notwithstanding, the court of appeals found that the introduction of this evidence "sent a significant message to the jury." *Id.* at *12. The lower court also gave weight to the jurors' request to see State's Exhibit 2 during deliberations, even though there is no evidence in the record that the jurors actually received the exhibit and, even if they had, State's Exhibit 2 was with them but a fraction of the time all other exhibits were with them. *Id.* at *12.

For the foregoing reasons, the record clearly demonstrates that appellant's "not saying" responses in State's Exhibit 2 did not move the jury from a state of non-persuasion to a state of persuasion on any material issue in the case. *See*

11

*Snowden v. State*, 353 S.W.3d 815, 825 (Tex. Crim. App. 2011). Nor were these responses reasonably likely to have caused such prejudice as to distract the jury or divert it from its proper fact-finding role. *Id.* Accordingly, the lower court's application of Rule 44.2(a) in this case represents a significant departure from the accepted application of the harm analysis in Rule 44.2(a). TEX. R. APP. P. 44.2(a).

## PRAYER FOR RELIEF

It is respectfully requested that this petition be granted and that the opinion of the court of appeals be reversed.

*/s/ Jeri Yenne*

**JERI YENNE**
District Attorney
Brazoria County, Texas

*/s/ Michelle R. Townsend*

**MICHELLE R. TOWNSEND**
Assistant District Attorney
Brazoria County, Texas
State Bar Number: 24049295
111 E. Locust, Suite 408A
Angleton, Texas 77515
Telephone: (979) 864-1230
Facsimile: (979) 864-1525
ellehcim@alumni.rice.edu

## CERTIFICATES OF SERVICE AND COMPLIANCE

This is to certify that on this the 11th day of September 2015, a copy of the foregoing instrument has been served on counsel as follows:

Brian W. Wice
Attorney at Law
The Lyric Centre
440 Louisiana, Suite 900
Houston, Texas 77002-1635
wicelaw@att.net

Lisa McMinn
State Prosecuting Attorney
P. O. Box 13046
Austin, Texas 78711-3046
information@spa.texas.gov

Further, that this document was generated on a computer program that calculates the word count to be 2,713 words. *See* TEX. R. APP. P. 9.4(i).

*/s/ Michelle R. Townsend*

**MICHELLE R. TOWNSEND**
Assistant District Attorney
Brazoria County, Texas
State Bar Number: 24049295
111 E. Locust, Suite 408A
Angleton, Texas 77515
Telephone: (979) 864-1230
Facsimile: (979) 864-1525
ellehcim@alumni.rice.edu

13

*Appendix A*

*Friend v. State,*
___ S.W.3d ___, *No. 01-14-00884-CR, 2015 WL 5026078*
*(Tex. App.—Houston [1st Dist.], delivered Aug. 25, 2015)*

Opinion issued August 25, 2015



In The

# Court of Appeals

For The

## First District of Texas

———————————

NO. 01-14-00884-CR

———————————

**ERIK FORREST FRIEND, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from County Court at Law No. 3**
**Brazoria County, Texas**
**Trial Court Case No. 203728**

---

## OPINION

Appellant, Erik Forrest Friend, was found guilty by a jury of the misdemeanor offense of driving while intoxicated.[1] The jury assessed Appellant's punishment at thirty days in jail and a $750 fine. Based on the jury's

---

[1] *See* TEX. PENAL CODE ANN. § 49.04(a) (Vernon Supp. 2014).

recommendation, the trial court suspended Appellant's jail sentence and placed Appellant on community supervision for fifteen months.

The dispositive issue that we address is whether the trial court abused its discretion by admitting evidence of Appellant's post-arrest invocation of his Fifth Amendment right against self-incrimination. Because we hold that the trial court abused its discretion in admitting the evidence, and that such constitutional error was harmful, we reverse the judgment of conviction and remand the case for a new trial.

## Background

On July 4, 2013, around 4:00 p.m., Appellant was driving his car on Folletts Beach in Brazoria County. Because it was a holiday, the beach was crowded with vehicles and pedestrians. Traffic had been directed to drive only one way on the beach.

Brazoria County Sheriff's Department Officers J. Hodges and R. McCullough were monitoring traffic on the beach. The officers were riding marked police ATVs. Officers Hodges and McCullough were watching traffic on the beach when they saw Appellant's car suddenly accelerate, spinning its tires in the sand. The car swerved, almost hitting a parked truck and then narrowly missing the two officers. Appellant continued down the beach. He was exceeding the speed limit and going the wrong way, against traffic. The officers then saw

2

Appellant drive in between two rows of parked vehicles, almost hitting a group of pedestrians. The officers pursued Appellant's car and pulled him over.

As he interacted with Appellant, Officer McCullough noticed that Appellant smelled like alcohol. The officer also noticed that Appellant's eyes were red and watery and that his speech was slurred. When the officer asked him whether he had been drinking, Appellant said that he had drunk two or three beers.

Appellant's girlfriend was in the passenger's seat. She informed the officers that she and Appellant had been arguing in the car. The officers determined that she also had been drinking and arrested her for public intoxication.

The officers believed that Appellant had been driving while intoxicated. Because they did not have the capability to videotape a DWI investigation, the officers called for a state trooper to come to the scene. Texas Department of Public Safety Trooper J. Gonzalez arrived at the beach around 4:30 p.m. Trooper Gonzalez noticed that Appellant's eyes were bloodshot, that his speech was difficult to understand, and that he smelled of alcohol.

The dash camera in Trooper Gonzalez's patrol car recorded his interaction with Appellant. When asked, Appellant, at first, told Trooper Gonzalez that he had started drinking at 8:30 that morning, but he then changed his mind and said that he had started drinking around 10:00 a.m. Appellant stated that, since that time, he

3

had drunk two or three beers. Trooper Gonzalez asked Appellant the current time, and Appellant incorrectly estimated the time to be around 1:30 or 2:00 p.m.

Appellant agreed to perform field sobriety tests at the scene. Trooper Gonzalez administered five field sobriety tests to Appellant: the Horizontal Gaze Nystagmus (HGN), the walk-and-turn, the one-leg stand, alphabet recitation, and finger counting. Trooper Gonzalez had Appellant perform the tests on the beach. Trooper Gonzalez thought it was a suitable location because the sand was hard and packed. Appellant's performance of the tests was recorded on the camera in Trooper Gonzalez's vehicle. During the testing, Appellant told Trooper Gonzalez that his back hurt, he was flat-footed, he had terrible balance, and he had "lazy eye."

When he administered the HGN test to Appellant, Trooper Gonzalez observed that Appellant displayed all six clues during the test. Each of Appellant's eyes showed (1) lack of smooth pursuit, (2) nystagmus or an involuntary jerking movement at maximum deviation, and (3) onset of nystagmus before forty-five degrees.

Trooper Gonzalez then had Appellant perform the walk-and-turn test. Trooper Gonzalez instructed Appellant to take nine steps, heel to toe, down an imaginary line, then plant his lead foot, turn around on it, and take nine steps back. During the test, Trooper Gonzalez observed that Appellant could not maintain his

4

balance, did not take the correct number of steps, turned improperly, and fell off the imaginary line. Trooper Gonzalez noted that Appellant demonstrated seven out of eight clues of intoxication.

Appellant next performed the one-leg stand test. Trooper Gonzalez instructed Appellant to stand on one leg, raise it six inches from the ground, and count while looking at his foot. In administering the one-leg stand test, an officer is trying to determine whether the person being tested can maintain his balance. Trooper Gonzalez observed that Appellant exhibited two clues out of two for intoxication on this test.

Trooper Gonzalez then asked Appellant to recite the alphabet beginning with D and ending at R. Appellant indicated he had a condition that causes him to mix up letters and numbers. Trooper Gonzalez permitted Appellant to recite the complete alphabet, which Appellant did successfully.

Lastly, Appellant performed the finger-count test. Appellant was instructed to count one to four, while touching each finger to his thumb, starting with his pinky and then reversing directions. Appellant was able to perform this test, however, he miscounted on the last set.

Trooper Gonzalez offered Appellant to submit to a breath-alcohol test, but he refused. Based on the totality of the circumstances, Trooper Gonzalez arrested Appellant for the offense of driving while intoxicated. Trooper Gonzalez read

5

Appellant the DIC-24 statutory warnings, informing Appellant of the consequences of refusing to submit a blood or breath specimen. Trooper Gonzalez then asked Appellant whether he would provide a breath or blood specimen. Appellant refused to provide either specimen.

Trooper Gonzalez transported Appellant to the local police station. When they arrived, but were still sitting in the patrol car, Trooper Gonzalez read Appellant the five *Miranda*-style statutory warnings found in Code of Criminal Procedure article 38.22.[2] Once inside the station, Trooper Gonzalez asked Appellant a series of questions from a form entitled, "DWI Interview with Legal Warnings." At the top of the form were printed the five article 38.22 warnings, including the following, which informed Appellant, "You have the right to remain silent and not make any statement at all and any statement you make may be used against you at your trial." Immediately below the statutory warnings was the following language: "The above legal warnings were either read by me or to me. I understand each of these rights and agree to waive (give up) these rights and answer the following questions."

Trooper Gonzalez asked Appellant the questions on the interview form and wrote Appellant's verbal answers in the spaces provided. Appellant answered the

---

2   *See* TEX. CODE CRIM. PROC. art. 38.22 (Vernon Supp. 2014) (providing statutory warnings virtually identical to *Miranda* warnings, except that article 38.22 includes warning that accused has right to terminate interview at any time, which *Miranda* does not require).

first eleven questions on the form regarding such information as his name, age, weight, when and what he had last eaten, and where he had been driving to and from when he was stopped. However, when Trooper Gonzalez asked Appellant the question "Have you been drinking?" Appellant responded, "Not saying anything to that one." The next four questions inquired what Appellant had been drinking, how much he had been drinking, the time of his first drink, and the time of his last drink. To each of these questions, Appellant responded, "Not saying," which Trooper Gonzalez wrote on the interview form.

Appellant provided substantive answers to the remaining questions on the form. Those questions asked for information regarding Appellant's health, such as, whether he had been injured recently, whether he was under a doctor's care, how much he had slept, and whether he had conditions such as epilepsy or diabetes. Appellant responded that he had slept five hours the night before and did not have the medical conditions inquired about on the form. Appellant signed the bottom of the form.

Appellant was later charged by information with the misdemeanor offense of driving while intoxicated. At trial, the State called Officers Hodges and McCullough to testify regarding their observations of Appellant. The State's primary witness was Trooper Gonzalez, who testified regarding his interactions with Appellant, including Appellant's performance of the field sobriety tests. The

7

State introduced the scene video taken by Trooper Gonzalez's in-car camera. The video shows Appellant's interaction with Trooper Gonzalez, his performance of the sobriety tests, Trooper Gonzalez's reading of Appellant's rights, and Appellant's refusal to give a blood or breath specimen.

Through Trooper Gonzalez, the State also offered the interview form in which Appellant had answered the five questions regarding whether he had been drinking by responding, "Not saying." Appellant objected to the admission of the interview form on a number of grounds. Among these, Appellant averred that he had asserted his Fifth Amendment privilege against self-incrimination when he had stated, "Not saying," in response to the questions regarding whether he had been drinking. Appellant asserted that to allow the admission of the interview would be a comment on Appellant's invocation of his Fifth Amendment right to remain silent. Appellant also asserted a relevancy objection to the portion of the form that contained his "not saying" responses.

The court conducted a hearing outside the presence of the jury regarding Appellant's objections to the interview form. Trooper Gonzalez and Appellant testified during the hearing. Appellant stated that he remembered exercising his right to remain silent when he was answering the questions on the form. Appellant said he exercised that right by stating "not saying." Appellant testified that he was

8

intending to say that he did not want to talk anymore. When asked what his responses meant to him he stated, "That I was being silent, but in a vocal way."

When the trial court asked the State why the form was relevant evidence, the State responded that it was relevant to show Appellant's "state of mind," specifically his "deceptiveness." The State argued that Appellant was not invoking his constitutional right to remain silent when he refused to answer the questions about drinking; rather, the prosecutor stated, "It's him being deceptive."

The trial court overruled Appellant's objections to the admission of the interview form, including Appellant's objection that the admission violated his Fifth Amendment right against self-incrimination. The interview form was then admitted into evidence as State's Exhibit 2. The jury was brought back in and the State continued its examination of Trooper Gonzalez. The State handed Trooper Gonzalez State's Exhibit 2 and began questioning him regarding its contents. The State went through the questions on the interview form and had Trooper Gonzalez state what Appellant's responses had been to the questions. This included Appellant's not-saying responses to two of the questions regarding his alcohol consumption.

After the State rested, the defense called Appellant's optometrist, Dr. J. Farmer, to testify. Dr. Farmer stated that she had examined Appellant's eyes in May 2013, two months before he was arrested for DWI. Dr. Farmer testified that

her examination showed that Appellant has amblyopia, commonly known as "lazy eye." Dr. Farmer testified that, because of the amblyopia, Appellant's eyes do not track equally.

Dr. Farmer also testified that, as part of her examination, she had Appellant track a target with his eyes. This revealed that Appellant's amblyopia results in naturally occurring, latent nystagmus in his eyes when tracking a target. Dr. Farmer stated that Appellant's nystagmus is likely congenital, meaning he has had it since birth. She testified that, of the 10,000 patients that she has seen over the years, only 10 to 20 of them have the amblyopia and nystagmus abnormality affecting Appellant.

Dr. Farmer acknowledged that drinking alcohol can also cause nystagmus; however, she stated that Appellant has nystagmus regardless of whether he has been drinking. She testified that she was not surprised that the Trooper Gonzalez observed nystagmus in Appellant's eyes during the HGN test. Dr. Farmer also testified that Appellant's amblyopia could affect Appellant's balance and ability to perform the walk-and-turn test because it affects depth perception.

Following the parties' closing arguments, the jury found Appellant guilty of the offense of driving while intoxicated and assessed Appellant's punishment at thirty days in jail and a $750 fine. Based on the jury's recommendation, the trial

court suspended Appellant's jail sentence and placed him on community supervision for fifteen months.

This appeal followed. Appellant presents eight issues.

## Invocation of Right to Remain Silent

In his second issue, Appellant asserts, "The trial court erred in overruling Appellant's objection to that portion of State's Exhibit No. 2 in which he exercised his right to silence, in violation of the Fifth Amendment to the United States Constitution."[3] *See* U.S. CONST. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself.").[4]

## A.    Standard of Review

We review a trial court's decision to admit or to exclude evidence for an abuse of discretion. *See Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App.

---

[3]    The State asserts that Appellant did not preserve his complaints regarding Exhibit 2 because Trooper Gonzalez testified to its contents immediately after the hearing at which the trial court had overruled Appellant's objections to the document. The State claims that, to preserve error, Appellant was required to either object to Trooper Gonzalez's testimony or to obtain a running objection to the document. We disagree. If a trial court hears objections to proffered evidence outside the jury's presence, and rules that the evidence is admissible, the objections are deemed to apply to the evidence when it is admitted before the jury without the necessity of repeating the objections. *Haley v. State*, 173 S.W.3d 510, 517 (Tex. Crim. App. 2005) (citing former Texas Rule of Evidence 103(a), applicable to this case). Appellant's objections to Exhibit 2 were heard by the trial court outside the presence of the jury. The trial court ruled that Exhibit 2 should be admitted. Thus, Appellant preserved his objections to Exhibit 2. *See id.*

[4]    Appellant also asserts on appeal, as he did in the trial court, that the admission of the form violated his privilege against self-incrimination provided by the Texas Constitution. *See* TEX. CONST. art. I, § 10.

2010). The test for abuse of discretion is whether the trial court acted arbitrarily or unreasonably, without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). An abuse of discretion occurs if the court's decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

## B.   Error Analysis

In *Miranda v. Arizona*, the United States Supreme Court held that, pursuant to the Fifth Amendment, an individual subjected to custodial interrogation must be informed that "he has a right to remain silent, that any statement he makes may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966). "The guaranty of fundamental fairness in the Due Process Clause forbids the government from making the *Miranda* promises and breaking them by using a suspect's exercise of a right as evidence against him." *Griffith v. State*, 55 S.W.3d 598, 605 (Tex. Crim. App. 2001) (citing *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240 (1976)); *see also Wainwright v. Greenfield*, 474 U.S. 284, 295, 106 S. Ct. 634, 640 (1986) ("What is impermissible is the evidentiary use of an individual's exercise of his constitutional rights after the State's assurance that the invocation of those rights will not be penalized."). Use of a defendant's silence for

either substantive or impeachment value is constitutionally prohibited; it is fundamentally unfair to simultaneously afford a suspect a constitutional right to silence following his receipt of his *Miranda* warnings and then allow the implications of that silence to be used against him. *Doyle*, 426 U.S. at 619, 96 S. Ct. at 2245. Silence "does not mean only muteness; it includes the statement of a desire to remain silent." *Wainwright*, 474 U.S. at 295 n.13, 106 S. Ct. at 640 n.13.

Introduction of a defendant's express invocation of his right to remain silent is prejudicial to a defendant because the introduction of such evidence invites the jury to draw an adverse inference of guilt from the exercise of a constitutional right. *See Hardie v. State*, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991); *Ex parte Skelton*, 434 S.W.3d 709, 719 (Tex. App.—San Antonio 2014, pet. ref'd). In other words, the probable collateral implication of a defendant's invocation of his right to remain silent is that he is guilty. *See Skelton*, 434 S.W.3d at 719. It follows that, if a defendant invokes his right to remain silent after receiving his post-arrest *Miranda* warnings, the State cannot use the defendant's invocation of his constitutionally-protected right to remain silent as evidence of his guilt at trial. *See Hardie*, 807 S.W.2d at 322; *Skelton*, 434 S.W.3d at 719. Appellant asserts that is what happened in this case. He contends that, after he had received his *Miranda* warnings, he relied on those rights and expressly invoked his right to remain silent by responding "not saying" to the potentially inculpatory questions regarding his

13

alcohol consumption. Citing *Doyle* and *Hardie*, Appellant asserts that the introduction of Exhibit 2—specifically his "not saying" responses to the questions regarding alcohol consumption—violated his Fifth Amendment right to remain silent because it revealed to the jury that he had expressly invoked his right to remain silent after being informed of his *Miranda* rights. He intimates that the introduction of Exhibit 2, during the State's case-in-chief, allowed the jury to make an adverse inference of guilt from his post-*Miranda* invocation of his right to remain silent.

The State asserts that the rule announced in *Miranda*—that the government may not use the defendant's post-arrest, post-*Miranda* silence in its case-in-chief—is not applicable here because Appellant waived his Fifth Amendment privilege to remain silent both before and during the interview. The State points out that Appellant signed Exhibit 2, which included the following language: "The above legal warnings were either read by me or to me. I understand each of these rights and agree to waive (give up) these rights and answer the following questions." One of the listed rights in Exhibit 2 was the right to remain silent. In addition to the written waiver, the State points out that Appellant did not remain silent; instead, he voluntarily answered the questions in Exhibit 2, which preceded and followed the objectionable section in which he responded "not saying."

14

A waiver of the right to remain silent can be expressly made, or it can be impliedly made by the accused's conduct. *See Berghuis v. Thompkins*, 560 U.S. 370, 383–85, 130 S. Ct. 2250, 2260–62 (2010); *Joseph v. State*, 309 S.W.3d 20, 24–27 (Tex. Crim. App. 2010). For purposes of analyzing this issue, we will presume that the record supports the State's position that Appellant knowingly and voluntarily waived his right to remain silent by signing the waiver in Exhibit 2 and by voluntarily speaking to Trooper Gonzalez.[5]

Once he has waived his right to remain silent, a defendant's statements to the police are admissible against him. *See Joseph*, 309 S.W.3d at 27. But waiver, in this context, does not always end the inquiry regarding whether the defendant's constitutional rights were violated. As the Supreme Court noted in *Miranda*, "where in-custody interrogation is involved, there is no room for the contention that the privilege is waived if the individual answers some questions or gives some information on his own prior to invoking his right to remain silent when interrogated." 384 U.S. at 475–76, 86 S. Ct. at 1628. The Supreme Court explained that "[t]he mere fact that [a defendant] answered some questions . . . does not deprive him of the right to refrain from answering any further inquiries." *Id.* at 445, 86 S. Ct. at 1612. In short, the Court was clear that a detained suspect

---

[5] In his first issue, Appellant asserts that he did not "knowingly, intelligently, and voluntarily" waive his rights pursuant to article 38.33 of the Code of Criminal Procedure; however, we need not reach that issue.

may change his mind about talking to the police "at any time prior to or during questioning." *Id.* at 473–74, 86 S. Ct. at 1627. Thus, "any waiver, express or implied, may be contradicted by an invocation [of the privilege] at any time." *Berghuis*, 560 U.S. at 387–88, 130 S. Ct. at 2263.

Here, Appellant intimates that his not-saying responses constituted a post-waiver assertion of his right to remain silent, as contemplated by *Miranda*. The State disagrees, asserting that Appellant's not-saying responses were too ambiguous to inform Trooper Gonzalez that Appellant wanted to terminate the interview.

In support of its position, the State relies on cases in which courts held that the defendant had not invoked his right to remain silent in a manner sufficient to inform the police that he wanted to cut off police interrogation. [6] The courts in those cases held that the police had not violated the defendant's constitutional rights by continuing to interrogate him. However, that is not the issue here. The issue in this case is whether the State introduced Appellant's assertion of his right to remain silent as substantive evidence from which the jury could make an adverse inference of guilt. As mentioned, the United States Supreme Court and the

---

[6] The State cites the following cases: *Dowthitt v. State*, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996), *Franks v. State*, 90 S.W.3d 771, 786–87 (Tex. App.—Fort Worth 2002, no pet.), and *Esquivel v. State*, No. 04–08–00730–CR, 2009 WL 3222626, at *11 (Tex. App.—San Antonio Oct. 7, 2009, no pet.) (mem. op., not designated for publication).

16

Texas Court of Criminal Appeals have been clear that the State cannot use a defendant's post-*Miranda* assertion of a constitutional right as evidence of guilt. *See Doyle*, 426 U.S. at 619, 96 S. Ct. at 2245; *Hardie*, 807 S.W.2d at 322.

We determine, within the context of this issue, whether Appellant's not-saying responses were an assertion of his right to remain silent. A person "who desires the protection of the [self-incrimination] privilege must claim it at the time he relies on it." *Salinas v. Texas*, 133 S. Ct. 2174, 2179 (2013) (internal quotations omitted). Here, Appellant did just that. Appellant's not-saying responses stand in contrast to the substantive answers to the questions in Exhibit 2 that precede and follow the objectionable portion. In addition, at the top of Exhibit 2 was printed the warning, "You have the right to remain silent and not make any statement at all and any statement you make may be used against you at your trial." A layperson, such as 20-year-old Appellant, could hardly have been clearer in expressing his desire to exercise his right to remain silent—in the face of the potentially incriminating questions regarding his alcohol consumption—than by answering, "not saying." *Cf. Connecticut v. Barrett*, 479 U.S. 523, 529, 107 S. Ct. 828, 832 (explaining that the words of a request for counsel will be "understood as ordinary people would understand them"). In other words, when confronted with questions regarding his alcohol consumption, questions that, by their nature, presented an actual danger of incrimination, Appellant affirmatively claimed his right to remain

17

silent. Thus, with respect to the topic of alcohol consumption, Appellant invoked his right to remain silent. By expressly invoking this right, Appellant rescinded his previous waiver of that right, at least with respect to the potentially incriminating topic of alcohol consumption. *See Berghuis*, 560 U.S. at 387–88, 130 S. Ct. at 2263.

We note courts have held that, after he has waived his right to remain silent, a defendant's actual silence, in response to certain questions, can be admitted against him. *See, e.g., United States v. Pando Franco*, 503 F.3d 389, 397 (5th Cir. 2007) (concluding that by answering some questions, after having received his *Miranda* warnings, the defendant "waived his right to have the entire conversation, including the implicit references to his silence contained therein, used against him as substantive evidence of guilt"); *United States v. Burns*, 276 F.3d 439, 442 (8th Cir. 2002) (holding that prosecutor's comment on defendant's silence in response to one question and eventual refusal to answer further questions did not violate *Doyle* because they were in the context of an otherwise admissible conversation); *Anderson v. State*, No. 02–05–00169–CR, 2006 WL 744272, at *2 (Tex. App.— Fort Worth, July 12, 2006, pet. dism'd) (not designated for publication) (holding that defendant may not selectively invoke his right to remain silent; therefore, trial court did not abuse its discretion in admitting portion of videotape in which defendant refused to answer specific questions while answering others). Yet, in

18

other cases, courts have held that a defendant who selectively remains silent may not have that silence used against him guilt. *See, e.g., United States v. Scott*, 47 F.3d 904, 907 (7th Cir. 1995) ("[A] suspect may speak to the agents, reassert his right to remain silent or refuse to answer certain questions, and still be confident that *Doyle* will prevent the prosecution from using his silence against him."); *United States v. Canterbury*, 985 F.2d 483, 486 (10th Cir. 1993) ("This court has recognized that when a defendant answers some questions and refuses to answer others, or in other words is 'partially silent,' this partial silence does not preclude him from claiming a violation of his due process rights under *Doyle*."); *United States v. Ghiz*, 491 F.2d 599, 600 (4th Cir. 1974) ("[I]f, in declining to answer certain questions, a criminal accused invokes his fifth amendment privilege or in any other manner indicates he is relying on his understanding of the Miranda warning, evidence of his silence or of his refusal to answer specific questions is inadmissible.").

This case, however, is distinguishable from any of these cases. Here, to prove Appellant's guilt, the State did not rely on Appellant's actual silence or on an oblique reference to Appellant's refusal to answer a question; instead, the State introduced and relied on Appellant's actual spoken words used to invoke his post-*Miranda* right to remain silent with respect to the topic of alcohol consumption. This is an important distinction. As the Supreme Court has noted, silence is

19

"insolubly ambiguous." *Doyle*, 426 U.S. at 617, 96 S. Ct. at 2244. Here, Appellant was not silent; he expressly asserted his right to remain silent in response to questions posing a real danger of incrimination. Unlike silence, Appellant's express assertion was not "insolubly ambiguous."

We also observe that the record shows the State manifestly intended to use Appellant's invocation of Appellant's right to remain silent as evidence of his guilt. At the hearing on Appellant's objections to the exhibit, the State revealed it would use Exhibit 2 to demonstrate Appellant's "deceptiveness" as shown by his refusal to provide answers to the questions regarding his alcohol consumption.

The State's manifest intent to use Appellant's assertion of his right to remain silent, that is, his not-saying responses, as evidence of his guilt, came to fruition in its questioning of Trooper Gonzalez, immediately following admission Exhibit 2 into evidence:

[The State:] Trooper Gonzalez, you testified before we broke that you read the defendant his *Miranda* warnings?

A. Yes.

Q. And what was the defendant's response?

A. That he would talk to me.

. . . .

[The State:] Now, I want to skip down to the question: Have you been drinking? Did you ask the defendant if he had been drinking?

20

A. Yes.

Q. And what was his response to you?

A. Not saying anything to that one.

Q. Not saying anything to that one. And you had asked him what he had been drinking?

A. Yes.

Q. And what was his response?

A. Not saying.

Q. Trooper, earlier when you asked him how much he had to drink, what was his response?

A. Two to three beers.

Q. And when you asked him at the station, was it different?

A. Yes.

Q. Did you feel that he was being deceptive with you?

[The Defense]: Objection to leading and calls for speculation.

THE COURT: Sustained.

. . . .

[The State:] Did you ask the defendant what was the time of his last drink?

A. Yes.

Q. And what was his response to your question?

A. Not saying.

Q. Is that a question that you previously asked the defendant?

21

A. Yes.

Q. Was it a different response?

A. Yes.

In its questioning, the State compared and contrasted Appellant's post-*Miranda*, not-saying responses to his earlier pre-*Miranda* responses in which he had admitted to drinking two or three beers. The State's questioning conveyed that Appellant's refusal to respond to Trooper Gonzalez's questions regarding his alcohol consumption, after he had been arrested for driving while intoxicated and informed of his *Miranda* rights, was indicative of Appellant's deceptiveness. This sent a message to the jury that Appellant, by his deceptiveness, was hiding something incriminating regarding his alcohol consumption when he affirmatively asserted his Fifth Amendment privilege. In other words, the State used Appellant's assertion of his right to remain silent, not only as evidence to discredit Appellant, but as substantive evidence from which Appellant's guilt could be inferred.

In sum, regardless of whether the not-saying assertions were sufficient to cut off the State's questioning of Appellant, the State was not permitted to use those assertions—which constituted Appellant's invocation of his constitutional right to remain silent with respect to the topic of alcohol consumption—as evidence from which the jury could infer Appellant's guilt. *See Doyle*, 426 U.S. at 619, 96 S. Ct. at 2245; *Hardie*, 807 S.W.2d at 322. We conclude that the admission into

22

evidence of Appellant's not-saying responses, that is, the admission of his assertion of his right to remain silent with respect to his alcohol consumption, was prohibited because it violated Appellant's right to due process. *See Doyle*, 426 U.S. at 619, 96 S. Ct. at 2245; *Hardie*, 807 S.W.2d at 322. Thus, we hold that the trial court abused its discretion in overruling Appellant's objections to the admittance of those portions of Exhibit 2 into evidence.

## C.   Harm Analysis

Because the error in admitting State's Exhibit 2 impinged on Appellant's constitutional rights, Texas Rule of Appellate Procedure 44.2(a) applies. *See* TEX. R. APP. P. 44.2(a); *Snowden v. State*, 353 S.W.3d 815, 818 (Tex. Crim. App. 2011); *see also*; *Wyborny v. State*, 209 S.W.3d 285, 292 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (applying Rule 44.2(a) constitutional harm analysis to error of overruling defendant's objections to State's questions and evidence that served to comment on his right to remain silent). Rule of Appellate Procedure 44.2(a) requires reversal in constitutional error cases "unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a). This standard "should ultimately serve to vindicate the integrity of the fact-finding process rather than simply looking to the justifiability of the fact-finder's result." *Snowden*, 353 S.W.3d at 820.

23

In conducting our analysis, we must focus "not upon the perceived accuracy of the conviction or punishment, but upon the error itself in the context of the trial as a whole, in order to determine the likelihood that it genuinely corrupted the fact-finding process." *Id.* at 819. We focus not on "whether the jury verdict was supported by the evidence"; rather, we focus on whether "the error adversely affected the integrity of the process leading to the conviction." *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010) (quotation omitted). We focus not on the weight of the other evidence of guilt, but rather on whether the error at issue might possibly have prejudiced the jurors' decision-making. *Pollard v. State*, 255 S.W.3d 184, 190 (Tex. App.—San Antonio 2008), *aff'd*, 277 S.W.3d 25, 33 (Tex. Crim. App. 2009). Error is not harmless "simply because the reviewing court is confident that the result the jury reached was objectively correct." *Snowden*, 353 S.W.3d at 819. Nonetheless, the presence of "overwhelming evidence of guilt is a factor to be considered." *Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002). Other factors to consider may include the nature of the error, whether it was emphasized by the State, the probable implications of the error, and the weight the jury would likely have assigned to it in the course of its deliberations. *Snowden*, 353 S.W.3d at 822. These are neither exclusive considerations nor even necessary considerations in every case. *See id.*

"At bottom, an analysis for whether a particular constitutional error is harmless should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment.'" *Id.* (quoting TEX. R. APP. P. 44.2(a)). In making our determination, we examine the entire record in a neutral, impartial and even-handed manner and do not make our examination "in the light most favorable to the verdict." *Hernandez v. State*, 80 S.W.3d 63, 65 (Tex. App.—Amarillo 2002, no pet.) (quoting *Harris v. State*, 790 S.W.2d 568, 586 (Tex. Crim. App. 1989)).

We begin the analysis by reviewing the evidence of Appellant's guilt. To prove that Appellant committed the offense of driving while intoxicated, the State had to prove that Appellant was intoxicated while operating a motor vehicle in a public place. *See* TEX. PENAL CODE ANN. § 49.04(a) (Vernon Supp. 2014). Intoxicated is defined as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol" or "having an alcohol concentration of 0.08 or more." TEX. PENAL CODE ANN. § 49.01(2)(A)–(B) (Vernon 2011).

We agree with the State that the evidence, supporting an inference that Appellant was intoxicated, when viewed in isolation, was strong. Officers Hodges and McCullough testified that Appellant was driving in an erratic dangerous

manner on the beach. Appellant had been speeding and going the wrong direction; he nearly hit the officers, a parked truck, and several pedestrians.

Officer McCullough's and Trooper Gonzalez's testimony indicated that (1) Appellant had blood-shot, red, watery eyes; (2) he smelled of alcohol; and (3) he had slurred speech. Appellant admitted to the officers that he had drunk two or three beers that day and that he had started drinking in the morning. The time of the stop was 4:00 p.m. When asked by Trooper Gonzalez, Appellant estimated the time to be around 1:30 p.m.

Trooper Gonzalez testified regarding each of the field-sobriety tests he administered to Appellant. He described each test in detail and how Appellant had performed on each test, pointing out Appellant's deficiencies. Trooper Gonzalez indicated that Appellant had exhibited a sufficient number of clues on the field-sobriety tests, which included the HGN, the walk-and-turn, and the one leg stand, to indicate that Appellant was intoxicated. According to Trooper Gonzalez, Appellant had exhibited six clues of intoxication on the HGN test, seven clues on the walk-and-turn, and two clues on the one-leg stand test. Trooper Gonzalez testified that Appellant had performed deficiently on the finger-count test. The scene video of Appellant's performance of the tests and his interaction with Trooper Gonzalez was also admitted into evidence and viewed by the jury.

26

The defense also presented evidence. The strength of the field-sobriety tests, particularly, the HGN test, was diminished by Dr. Farmer's testimony. She testified that she was Appellant's optometrist. She had examined Appellant two months before his arrest for DWI. In her examination, Dr. Farmer had diagnosed Appellant with amblyopia, otherwise known as lazy eye. She stated that she had observed in her examination that the amblyopia caused Appellant to have naturally-occurring nystagmus in his eyes when tracking a target. She testified that she was not surprised that Trooper Gonzalez saw nystagmus in Appellant's eyes. Dr. Farmer also testified that Appellant's eye condition could affect his performance of the walk-and-turn test because it affects his depth perception and balance. The defense also questioned whether the performance of the field-sobriety tests on a sunny, sandy beach affected the results.

The State asserts that its strong evidence pointing to Appellant's intoxication "damaged appellant more than any words" found in Exhibit 2. However, our inquiry is not one simply of weight or sufficiency; rather, we determine the likelihood that the admission into evidence of Appellant's refusal to answer corrupted the fact-finding process, affected the integrity of the process leading to the conviction, or prejudiced the jurors' decision-making. *See Snowden*, 353 S.W.3d at 819; *Langham*, 305 S.W.3d at 582; *Harris*, 790 S.W.2d at 586; *see also Whitehead v. State*, 437 S.W.3d 547, 553 (Tex. App.—Texarkana 2014, pet. ref'd)

("The error in this case violates the constitutional right against self-incrimination, the violation of which adversely affects the integrity of the process leading to a conviction.").

We next turn to whether the State emphasized the error. The record shows that the State referenced Exhibit 2 during its opening statement, during the presentation of its case-in-chief, and during closing. In its opening statement, the State referenced Exhibit 2 by stating: "At that point, [Trooper Gonzalez and Appellant] make it into the station. There are some questions that are asked of Mr. Friend, and that's some evidence that you will be able to see over the course of this trial."

The State introduced the contents of Exhibit 2 into evidence twice during trial. Exhibit 2 itself was admitted into evidence after the trial court overruled Appellant's objections to it. Then, Trooper Gonzalez testified regarding the exhibit's content. It was during its examination of Trooper Gonzalez that the State characterized Appellant's refusal to answer the questions regarding his alcohol consumption as being deceptive. The State contrasted Appellant's post-*Miranda* refusal to answer the questions regarding whether he had been drinking with his earlier pre-*Miranda* responses.

The State's last reference to Appellant's refusal to answer occurred during closing argument. The State told the jury that there are "confessions" in the

28

evidence. The State pointed out that Appellant refused to provide a breath or blood specimen, even though he knew that his refusal was admissible and could be used to prosecute him. The State pointed out that the video shows Appellant rereading the DIC-24 warnings and pondering whether he should submit to a breath test before he ultimately refused to give a specimen. The State then argued as follows:

> Mr. Friend is thinking of his options and at one point he says, deny it, right, because if it's point—and he stops. Why? Because he is worried about it. He is worried about it. He ponders it and he says, I am going to keep that evidence. He is keeping that evidence from you.
>
> And if you want more evidence of that, then just look at this State's Exhibit No. 2. He answers all of these questions. His *Miranda* warnings were read to him. He signed it. There is a signature. When did you last eat? What did you eat? Have you been drinking?
>
> Now, it went from two or three drinks to not saying anything.
>
> [The defense]: We object at this point in time.
>
> [The State]: Not saying anything.
>
> . . . .
>
> [The defense]: We're objecting pursuant to the Fifth Amendment of the United States Constitution, Article 1, Section 10 of the Texas Constitution.
>
> THE COURT: Still overruled.
>
> [The defense]: Thank you.
>
> [The State]: Not saying anything to that one. Why not? Because he knows what that is going to come back as.

29

Implicit in the State's remarks is its suggestion that Appellant refused to answer the questions only because he had something incriminating to hide. If he had nothing to hide, he would have answered. By its argument, the State invited the jurors to ask themselves what Appellant was hiding and to infer from his post-*Miranda* refusal that he was hiding the fact that he was intoxicated. The jury may have been left with the impression that, once he was aware of his *Miranda* rights, Appellant had used those rights to hide evidence. And, when the trial court overruled Appellant's objections, the jurors may have been left with the impression that it was permissible for them to infer guilt from Appellant's not-saying responses. *See Wyborny*, 209 S.W.3d at 292 (recognizing that overruling of objections to State's evidence implicating appellant's silence left jury with impression that it was free to draw inferences of guilt from such silence); *Bhakta v. State*, 981 S.W.2d 293, 296 (Tex. App.—San Antonio 1998, pet. ref'd) (noting that trial court's overruling of objection to prosecutor's comment left jury with impression that it was acceptable to draw inference of guilt from appellant's silence).

The State asserts that, "to secure a conviction," it did not "rely heavily" on Appellant's refusal to answer nor did it emphasize the refusal in its closing argument. It asserts that it instead relied on the witnesses' testimony and the scene video. We agree that the State relied on this evidence. However, the State also

relied on Appellant's refusal to answer the questions regarding his alcohol consumption. The evidence of Appellant's refusal to answer stood in contrast to the scene evidence of Appellant's intoxication. This contrast was highlighted by the State during the presentation of its evidence and during its closing argument. While it may not have occupied much space in the record, it sent a significant message to the jury, permitting it to infer Appellant's guilt from his post-*Miranda* assertion of his right to remain silent.

It is not easy to determine what weight a juror would place on an error such as the one in this case. The contested issue at trial was whether Appellant was intoxicated. The defense asserted that the State's scene evidence did not prove, beyond a reasonable doubt, that he was intoxicated.

The record shows that the jury received the case at 10:42 a.m. Shortly after 11:00 a.m., the record reflects that the jury requested to see (1) Appellant's medical records from Dr. Farmer, (2) the DIC-24 form, and (3) the scene video. The jury began watching the 52-minute scene video after lunch, around 1:00 p.m.

At 3:40 p.m. the jury sent a communication to the judge asking to see Exhibit 2. The note stated, "[W]e would like the Troopers report [sic] that shows the responses that Erik gave written by Trooper Gonzalez." The record reflects that the jury returned its verdict, finding Appellant guilty, at 4:11 p.m.

31

While we do not know why the jury requested Exhibit 2, we do know that it was the final piece of evidence requested by the jury. At the time of the request, the jury had already been engaged in deliberations for several hours. The jury had received the other items of evidence four-and-one-half hours earlier, before the majority of its deliberation. We also know that, thirty minutes after requesting Exhibit 2, the jury found Appellant guilty.[7] At most, the juxtaposition of the request and the verdict indicates that the error served as the tipping point for the jury's guilty verdict. At a minimum, it raises a question whether the jury placed some weight on the error.

Given the record, we are unable to conclude, beyond a reasonable doubt, that the error did not contribute to Appellant's conviction. We hold that the error was harmful. *See* TEX. R. APP. P. 44.2(a).

We sustain Appellant's second issue.[8]

---

[7] The State avers in its brief that it is unknown whether the jury ever received Exhibit 2. The State points out that the trial court had responded in writing to the jury when it had requested and received the other pieces of evidence. We note that the jury charge informed the jury as follows: "You may, if you wish, examine exhibits. If you wish to examine an exhibit, the foreperson will inform the Court and specifically identify the exhibit you wish to examine. Only exhibits that were admitted into evidence may be given to you for examination." We have no reason to believe that the trial court did not honor the instruction and provide Exhibit 2 to the jury as it had provided the other exhibits.

[8] Because of our disposition of issue two, we need not address Appellant's remaining issues. *See* TEX. R. APP. P. 47.1.

32

## Conclusion

We reverse the judgment of the trial court and remand for a new trial.

Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Massengale.

Publish.  TEX. R. APP. P. 47.2(b).

*Appendix B*

*State's Exhibit 2*



# DWI INTERVIEW WITH LEGAL WARNINGS

1. You have the right to remain silent and not make any statement at all and any statement you make may be used against you at your trial;
2. Any statement you make may be used as evidence against you in court;
3. You have the right to have a lawyer present to advise you prior to and during any questioning;
4. If you are unable to employ a lawyer, you have the right to have a lawyer appointed to advise you prior to and during any questioning; and
5. You have the right to terminate this interview at any time.

The above legal warnings were either read by me or to me. I understand each of these rights and agree to waive (give up) these rights and answer the following questions.

Name? _____ Age? _____ Weight? _____

Were you operating a motor vehicle? _____ Were you intoxicated? _____

Destination? _____ Started from? _____

Time you left? _____ Where are you now? _____

When did you last eat? _____ What & how much? _____

Have you been drinking? _____ What? _____

How much? _____ Time of first drink? _____

Time of last drink? _____ Are you ill? _____

What's wrong? _____

Have you been injured lately? _____ What injury? _____

Are you under a Doctor's care? _____ Name of Doctor? _____

Reason for medical treatment? _____

Do you have epilepsy? _____ Do you have diabetes? _____

Taken any medications lately? _____ What? _____

Last dose? _____ When did you last sleep? _____

How many hours? _____ Physical handicaps? _____

_____
(Signature of person arrested)

_____
Officer / Deputy

_____                    _____
Date                                        Time

THP-1B (09/04)